**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Charles Vincent MANCUSO and Elaine
Rayes Mancuso, Defendants-
Appellants.**

**No. 29615.**

United States Court of Appeals,
Fifth Circuit.

May 26, 1971.

Rehearing Denied July 8, 1971.

George M. Leppert, New Orleans, La., for defendants-appellants.

Gerald J. Gallinghouse, U. S. Atty., Julian R. Murray, Jr., Asst. U. S. Atty., New Orleans, La., for plaintiff-appellee.

Before CLARK, Associate Justice,* and GEWIN and RONEY, Circuit Judges.

CLARK, Associate Justice:

The appellants, husband and wife, stand convicted by a jury of mail fraud, 18 U.S.C. § 1341, based upon misrepresentations contained in their applications for medical and hospital insurance coverage as well as their claims made on the policies that were subsequently issued. Error is claimed in four particulars: (1) prejudicial conduct by the prosecutor in the impeachment of one of appellants' witnesses; (2) the admission of medical testimony and records which appellants claim enjoyed the physician-patient privilege; (3) the use of blackboard charts in demonstrating items of proof to the jury, some of the items of which were beyond the period of the indictment; and (4) the requirement in the sentences as to probation that the defendants make full restitution of the amounts shown in the indictment as calculated and scheduled by the probation officer. We find no merit in these claims save for that concerning the sentences which do appear to us to be vague. The judgment is therefore affirmed but the sentences are vacated and the cause is remanded for the sole purpose of re-sentencing.

1. We have carefully studied the extended record and exhibits which show that the appellants in 1961 applied for and procured seven separate medical and hospitals policies with different companies. Appellants failed to reveal their previous illnesses in both the applications for these policies and the claims that they subsequently made thereunder. The evidence was conflicting as to these representations and the jury accepted that of the prosecution as true and found both of the appellants guilty. Three witnesses for the appellants, Barcelona, Montaldo and Galati, who were army buddies of Mr. Mancuso, were visiting in appellants' home when the insurance agents called and discussed the applications for insurance. Each of these witnesses related that Mr. Mancuso advised each salesman in detail of the previous illnesses of both himself and his wife. In particular, they testified concerning the serious injuries arising from a passenger bus collision in 1959.

On cross-examination of witness Galati, the prosecutor asked if the previous witness, Montaldo, had discussed his testimony with Galati. Upon the latter's denying any such discussion, the prosecutor advised Galati that he intended to

* Associate Justice, United States Supreme Court, Retired, sitting by designation.

impeach Galati's testimony. The prosecutor then related to Galati, the time, circumstances and substance of statements Montaldo had made to Galati during the lunch recess on that day. Galati denied "anything like that happening or any such conversation" ever occurring. Upon the closing of the cross-examination and the announcement of the defense that it had no re-cross the Judge asked "May the witness be excused?" Whereupon the prosecutor asked that Mr. Galati remain available and be placed under the rule of sequestration. The rule had not been involved as to him previously. The court then advised the witness: "Mr. Galati, you are advised you should not discuss, you must not discuss the case with anyone until such time as you are called to the witness stand. You should not discuss it with any of the parties or the witnesses or counsel. You may, of course, discuss it with a lawyer of your selection at any time."

Subsequently witness Galati was again called by appellants and related what the three witnesses had done at lunch and reiterated that they had "discussed nothing at all about the trial."[1] Upon the defense resting its case, the United States introduced as a witness an assistant U.S. Attorney who testified that he had overheard Montaldo relating his experience and testimony on the witness stand to Galati while waiting for the elevator outside the courtroom. In its argument to the jury, the government claimed that Galati's testimony on this matter was "perjury and it gives you some insight into Mr. Galati.". Defense counsel countered during his argument that he did "not quite go that far" and attempted to explain the episode on which Galati's impeachment was based. The defense did not object to the impeachment proceedings nor to the sequestration warning by the Court; they made neither a motion to strike any testimony nor to change or limit the warn-

ing nor to explain the same. Indeed no objection was noted until after the jury retired to arrive at its verdict. Then the defense filed an oral motion for mistrial based on two grounds (1) that the impeachment attempt was prejudicial, the evidence thereof insufficient and the basis irrelevant; and (2) that the sequestration warning given Mr. Galati by the Judge was prejudicial. The motion was submitted without argument or the citation of authority.

We have carefully examined the testimony and find that the effort to impeach the witness Galati was proper and successful. Indeed it was so successful that the defense dropped the witness and immediately placed the appellant Mancuso on the stand. Moreover upon recalling Galati subsequently, the substance of the conversation was not specifically denied. The warning given by the judge to Galati had also been given on the same day to the witness Montaldo and no objection was made to it. The warning to Montaldo differed in only one respect, i. e. Mr. Galati was advised that he might, of course, discuss his testimony with his own lawyer. This sentence was not included in the warning to Mr. Montaldo. However this variance appears to us to be irrelevant. The fact that the jury heard the warning given Montaldo eliminates any possible inference that Galati was being singled out. The claim that the episode was "staged" has no support in the record. It merely employed a technique quite familiar to trial lawyers for testing a witness. Often it fails but here it worked. We find no error.

2. The rules of evidence and privileges of witnesses in Federal courts are governed "by the principles of common law as they may be interpreted by the Courts of the United States in the light of reason and experience." Rule 26, Federal Rules of Criminal Procedure.

---

1. Since Galati had not then been placed under the rule of sequestration, there was nothing *per se* improper in Galati talking to Montaldo or other witnesses about what took place in court. Because Galati did not know that, however, the impeachment was successful.

The physician-patient privilege was not known to the common law. Federal Practice and Procedure, Sec. 406 (1969 edition); 8 Wigmore Evidence, § 2380; McCormick on Evidence, § 101, p. 211; Orfield, Privileges in Federal Criminal Evidence, 40 U.Det.L.J. 403, 411; United States v. Mullings, 364 F.2d 173, 176 n. 3 (C.A. 2, 1966).

Appellants cite a number of civil cases in support of their position. None of these are apposite. Appellants confuse the Criminal Rule with the Civil one. Rule 43 of the Federal Rules of Civil Procedure does provide that state rules of evidence must be honored in civil cases, but the Criminal Rules include no such directive. See United States of America v. Woodall, 438 F.2d 1317, Fifth Circuit, decided Feb. 24, 1971. Appellants also cite one criminal case, Barnes v. United States, 374 F.2d 126 (C.A. 5, 1967). However, reliance on it is also misplaced. *Barnes* merely stands for the proposition that the substance of the privilege must depend on statute and does not exist at common law. *Barnes* having arisen in Texas which had no such statute foreclosed any possibility of the privilege being available in that case. Here the testimony of the doctors brought both light and truth to the situation before the court and was entirely relevant and admissible.

3. Nor do we find substance to the claim or prejudice as to the use of the charts showing various accident claims made by appellants. The gravamen of the appellants' objection seems to be that the charts referred to items extending before and beyond the dates of the indictment. But this was necessary to prove that the appellants had intentionally devised a scheme and artifice to defraud. Proof of intent and motive is difficult and in developing it, the prose-

cution here was but offering all of the surrounding circumstances that were relevant to the issue involved. This issue, as it was characterized by counsel for the appellants in closing argument trial, was "The meat of the coconut, the real nitty gritty, is was there a scheme to defraud?" Other transactions connected with the offenses charged have long been used to show a general pattern, the necessary criminal intent or the guilty knowledge of the defendant. Kowalchuk v. United States, 176 F.2d 873 (C.A. 6, 1949). Cf. Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Likewise subsequent acts of a similar nature are admissible as proof of intent as they indicate the intent and motive of appellants during the acts charged in the indictment. See United States v. Marchisio, 344 F.2d 653, 667 (C.A. 2, 1965); United States v. Prince, 264 F.2d 850, 853 (C.A. 3, 1959).

4. The Government admits the sentence as pronounced is vague. While appellants may be required to make *restitution to aggrieved parties* for actual damages or loss caused by the offense which appellants are found to have committed, 18 U.S.C. § 3651, Karrell v. United States, 181 F.2d 981 (C.A. 9, 1950), cert. denied, 340 U.S. 891, 71 S.Ct. 206, 95 L.Ed. 646, the requirement must be clear and unequivocal. The better practice is that where parties are aggrieved, the amounts to be paid and the manner of payment should be recited in the order, rather than delegating these details to the probation officer. See Whitehead v. United States, 155 F.2d 460, 462 (C.A. 6, 1946), cert. denied, 329 U.S. 747, 67 S.Ct. 66, 91 L.Ed. 644. For this reason the case is remanded for resentencing, but it is affirmed in all other respects.