**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Thomas Leonard SHELBY,**
**Defendant-Appellant.**

**No. 77–1772.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 9, 1978.
Decided March 31, 1978.

Matthew J. Flynn, Milwaukee, Wis., for defendant-appellant.

William J. Mulligan, U. S. Atty., William E. Callahan, Jr., Asst. U. S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before CASTLE, Senior Circuit Judge, WOOD, Circuit Judge, and EAST, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

On November 4, 1976 the defendant, Thomas Leonard Shelby, was charged in a six count indictment with bank larceny in 1975 and 1976 from three different banks insured by the Federal Deposit Insurance Corporation.[1] Three of the counts were dismissed by the government. The defendant waived trial by jury on the remaining three counts, and upon a stipulation of facts was found guilty by the court on each count. Defendant was sentenced to imprisonment for a period of three years, the first six months to be served in a jail-type institution, the balance of the sentence of imprisonment was suspended and defendant was placed on probation for the remaining two and one-half years. It is not stated specifically, but the sentence is construed to be on each count to run concurrently. In addition, it was ordered that the "defendant is to make restitution in such amounts and at such times as directed by the Probation Department."

On appeal the issues are the legality of a warrantless search at defendant's home of his trash; the voluntariness of the defendant's two confessions; the effect, if any, of an *ex parte* letter from a former employer of defendant to the sentencing judge; and the vagueness of the probation condition of restitution. We affirm, but remand to the trial court for correction of the sentence to evidence compliance with the limitations of 18 U.S.C. § 3651.[2]

The facts of the offense are not disputed and may be briefly stated. Defendant had been employed in a supervisory capacity by a company rendering janitorial services to a number of banks. Upon leaving that employment the defendant retained the keys to those banks which he subsequently used to enter after hours to steal various amounts of coins from tellers' cages. The stolen coins in the three counts totaled about $3,000.

Later the defendant aroused suspicion at a different bank by exchanging large amounts of coins for bills. Upon being alerted, the Federal Bureau of Investigation and the local police requested the Sanitation Department of the City of Milwaukee to advise its sanitation workers serving defendant's residence to watch for bank

---

* The Honorable William G. East, United States Senior District Judge for the District of Oregon, is sitting by designation.

1. 18 U.S.C. § 2113(b).

2. 18 U.S.C. § 3651 provides in pertinent part:

> While on probation and among the conditions thereof the defendant—
>
> * * * * * *
>
> May be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had; . . . .

coin wrappers and trays when collecting trash from defendant's premises. At the usual time two sanitation employees made the collection. Defendant had three covered garbage cans behind his garage at the back of his premises immediately inside a low fence adjoining the public alley. The sanitation workers, as was their custom, reached over the low fence, hoisted the cans to the truck and dumped them. Both at that time in the truck and several blocks away the two workers opened and examined the contents of the paper or plastics bags which had been contained in the cans. They found what they were looking for, various aluminum bank trays and coin wrappers, which were turned over to the authorities. That discovery was used by the Federal Bureau of Investigation as justification for a warrant to search the defendant's house. That search produced bank coin bags and resulted in the defendant's first confession to one of the thefts. He was not arrested at that time. Subsequently, upon hearing that the local police also wanted to talk to him, defendant went to the local police department. In the course of the interview with the police, the defendant gave a second confession.

The defendant's motion to suppress the evidence seized from his trash without a warrant, and the resulting fruits of that search, the search by warrant of his house and the confessions, was denied.

### Warrantless Search of Trash

█ We do not view the issue in this case as one of the standing of the defendant to object to the warrantless search since the search was of his trash and was initiated on his premises. This situation may be distinguished from cases similar to *Mabra v. Gray,* 518 F.2d 512 (7th Cir. 1975), *cert. denied,* 423 U.S. 1023, 96 S.Ct. 466, 46 L.Ed.2d 397, in which it was held that the defendant had no standing to object to the warrantless search of his wife's purse not in his possession. We assume in the circumstances of this case, as in *United States v. Alewelt,* 532 F.2d 1165, 1167 (7th Cir. 1976), *cert. denied,* 429 U.S. 840, 97 S.Ct. 114, 50 L.Ed.2d 109 (1977), that defendant had standing to raise the Fourth Amendment claim. However, the mere existence of a possessory interest sufficient to afford standing is not by itself always indicative of success on the merits. *Id.* at 1168. As we see the issue, it is whether or not the search of the trash constituted a violation of the defendant's reasonable expectation of privacy. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). It is defendant's position that he had a reasonable expectation of privacy in his trash since he contemplated that it would be collected and disposed of by intermingling with other trash and eventually destroyed. Perhaps the defendant did in fact believe that the incriminating evidence of his crime so disposed of would go undetected. If defendant did, we view it only as additional bad judgment on his part. In the real world to so view the status of one's discarded trash is totally unrealistic, unreasonable, and in complete disregard of the mechanics of its disposal. In our view the placing of trash in the garbage cans at the time and place for anticipated collection by public employees for hauling to a public dump signifies abandonment. Defendant may have decided to assume the risk, calculating no one would think to search in his garbage can, or he may have been careless, but whatever his reason he evidenced an intent in a convenient but risky way to permanently disassociate himself from the incriminating contents. The garbage cans cannot be equated to a safety deposit box. The contents of the cans could not reasonably be expected by defendant to be secure, nor entitled to respectful, confidential and careful handling on the way to the dump. Trash generally is not so highly regarded. Collectors do not bear some kind of fiduciary relationship with trash customers to make sure that their trash remains inviolate. The defendant could not reasonably have believed that the City Sanitation Department had any responsibility to help him dispose of the evidence of his crimes. It was a case of the defendant's misplaced and unjustified trust.

█ It is common knowledge, at times due to the unfortunate circumstances of

some persons or even just for curiosity or mischief, that others may disturb one's trash. . The defendant admitted that this had happened on occasion but argues that it is irrelevant. We believe it should at least have served to remind the defendant of the unreliability of any thought of privacy he may have had about his trash. It therefore seems to be more prudent to put only genuine trash, not secrets, in garbage cans, except perhaps in California.[3] See *People v. Krivda*, 5 Cal.3d 357, 96 Cal.Rptr. 62, 486 P.2d 1262 (1971), *vacated*, 409 U.S. 33, 93 S.Ct. 32, 34 L.Ed.2d 45, *reaffirmed*, 8 Cal.3d 623, 105 Cal.Rptr. 521, 504 P.2d 457 (1973), *cert. denied*, 412 U.S. 919, 93 S.Ct. 2734, 37 L.Ed.2d 145. In this four-three decision the California Supreme Court takes a different view. *Krivda* followed *People v. Edwards*, 71 Cal.2d 1096, 80 Cal.Rptr. 633, 458 P.2d 713 (1969), which seems to adopt a theory of selective or limited abandonment. There the court permitted abandonment for disposal purposes, but not for all purposes and voided the search. We believe that to apply fine constitutional lines to discarded trash placed within easy public access for removal is too unrealistic to be pursued.[4] Each case, however, must turn upon its own facts. We perceive the circumstances of this case to suggest that the defendant knowingly risked exposure to the public. *Katz v. United States*, 389 U.S. at 351, 88 S.Ct. 507. We see a distinction between the present case and *United States v. Kahan*, 350 F.Supp. 784 (S.D.N.Y.1972), *rev'd on other grounds*, 2 Cir., 479 F.2d 290, *rev'd with directions to reinstate the district court judgment*, 415 U.S. 239, 94 S.Ct. 1179, 39 L.Ed.2d 297 (1974). In spite of the long history of that case, only the district court considered the similar issue. It held that a warrantless search of a wastebasket along side the defendant's desk in a government office could not be justified by the theory of abandonment. Even though we believe it to be the common concept that wastebaskets are intended and expected to be routinely emptied by somebody somewhere and not left to overflow, we believe the present case on its facts is distinguishable.[5]

In denying defendant's motion for suppression the district court relied in part upon *United States v. Mustone*, 469 F.2d 970 (1st Cir. 1972), and *Magda v. Benson*, 536 F.2d 111 (6th Cir. 1976), approving under somewhat similar circumstances the warrantless search of abandoned trash. See also *Abel v. United States*, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924); *United States v. Cox*, 428 F.2d 683 (7th Cir. 1970),, *cert. denied*, 400 U.S. 881, 91 S.Ct. 127, 27 L.Ed.2d 120, and *United States v. Minker*, 312 F.2d 632 (3rd Cir. 1962), *cert. denied*, 372 U.S. 953, 83 S.Ct. 952, 9 L.Ed.2d 978, which although are factually distinguishable, discuss some variations of abandonment.[6]

We recognize the police involvement in this case as distinguished from a case in which there was no police motivation or participation in a search by a third party so as to render the Fourth Amendment not applicable. *United States v. Mekjian*, 505 F.2d 1320 (5th Cir. 1975).[7]

**3.** In their arguments the parties have overlooked one of the most adept garbage can intruders. Even in urban areas, neighborhood raccoons capably de-lid garbage cans, dump them over and sort out their contents for all to see.

**4.** For a favorable discussion of *Krivda* and related cases, see Note, 1974 Wisc.L.Rev. 212.

**5.** If wastebaskets were generally conceded to be safe, there would be a diminished market for paper shredders. They serve different purposes, but see *United States v. Kahan*, 350 F.Supp. at 796, n. 8.

**6.** For an overall discussion of the Fourth Amendment, including abandonment, see Moylan, *The Fourth Amendment Inapplicable v. The Fourth Amendment Satisfied: The Neglected Threshold of "So What?"*, 1977 S.Ill.U. L.J. 75, 110–12.

**7.** We also find some support for our position that there was no Fourth Amendment violation when the collectors "seized" the defendant's garbage at the behest of the FBI in *Lewis v. United States*, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966). In that case an undercover federal narcotics agent misrepresented his identity in order to gain an invitation into the defendant's home for the purposes of purchas-

*Confession Issues*

Defendant argues that both confessions should be suppressed because both were the fruits of the warrantless trash search, and secondly because both were involuntary, relying on *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), and *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). The first confession was to the FBI during the course of the house search pursuant to a warrant and the second was to the local police when the defendant voluntarily went to the station.

As we have found that the trash search was not in violation of the defendant's Fourth Amendment rights, *Wong Sun* and *Brown* are not applicable.

▪ On the issue of the voluntariness of the first confession the defendant correctly points out that the trial judge in denying the motion to suppress did not specifically state that he found the confession to be voluntary. The court mentioned that it found no police misconduct. The defendant's evidence had shown that the FBI agent had used such phrases as would "have the book thrown at him" if he did not confess, and would not be given "jail time" if he did. The defendant testified that the motivation for his confession was related to three fears: that lack of cooperation would result in going to jail; that his wife might become involved; and that he would be taken out handcuffed in front of his children. Defendant also brings to our attention the form and content of the defendant's handwritten confession pointing out its spelling errors and uneven word structure as evidence of coercion. The trial court noted, referring to the defendant's conversation with the agent, that the defendant was a little frightened and "may

have juxtaposed all of these comments in his own mind to achieve a distorted perception of coercion."

The court heard and considered the evidence of police misconduct and coercion, and found the confession to be admissible as stated in its Memorandum and Order. The court found that the agent's comments alleged to be misconduct were "not used in any manner that could reasonably be termed as leverage or pressure in obtaining the written confession." We cannot say that the finding is clearly erroneous. *United States v. Ganter,* 436 F.2d 364 (7th Cir. 1970). Beyond that, the trial court was less specific in finding that the defendant was frightened and may have felt in his own mind some coercion. Perhaps the trial court could have more fully elaborated on its factual determinations and reasoning in concluding that the confession was voluntary, but we believe it was sufficiently "clear cut" to meet the test of *Lego v. Twomey,* 404 U.S. 477, 483, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). In favorably viewing the voluntariness of the confession we have to consider the totality of circumstances believing it to have been shown by a preponderance of the evidence that the confession was a product of rational intellect. *United States v. Reynolds,* 532 F.2d 1150 (7th Cir. 1976); *United States v. Medina,* 552 F.2d 181, 187 (7th Cir. 1977), *cert. denied,* 429 U.S. 1109, 97 S.Ct. 1144, 51 L.Ed.2d 563. It is only normal to expect that a defendant under similar circumstances would be fearful for himself and wife and of embarrassment to his children, but there is nothing in this record to suggest that such fears were the compelling motivations.

ing marijuana. The defendant moved to suppress the drugs and the agent's testimony on the grounds that the agent's activities constituted a warrantless search and seizure in violation of the Fourth Amendment. The Supreme Court found no legally cognizable invasion of the defendant's privacy. The Court relied heavily on the fact that the intrusion was invited by the defendant and that the agent did nothing not contemplated by the defendant when he asked him in. By analogy, in the

present case the trash collectors' intrusion into the defendant's curtilage was invited by the defendant and while on the premises the collectors undertook no activities not contemplated by the defendant. They merely picked up the trash, without searching it, and left without conducting any search of the premises. That the trash collectors were cooperating with the police is immaterial. Thus, the "seizure" of the garbage from the defendant's curtilage did not violate the Fourth Amendment.

In regard to the second confession the defendant argues that it was not shown that *Miranda* warnings were first given, and further that there was an element of coercion because the local police informed the defendant of the evidence already known to the FBI. The record clearly shows the defendant was not in custody at any time during the interrogation although it took place at the police station. At one time he left during the process to run an errand. *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977), controls. We see no coercion justifying a finding that the confessions were not voluntary.

### The Sentence

■ The defendant's former employer wrote to the judge alleging that the defendant had stolen substantially more than what was charged in the remaining three counts or in all counts and urging a jail term. Defendant claims that the trial court was greatly influenced by this letter. The receipt of the letter was made known to the defense counsel who responded to it during his argument in mitigation. In sentencing the trial court noted the disparity in the sums allegedly involved but also noted it was not placed on record during the trial. For the three separate felony violations the concurrent sentence was for only six months in a jail-type institution. Even considering defendant's prior good record, there is certainly nothing in the lenient sentence or anything suggested by the remarks of the court sufficient to cause us to believe that the court in imposing sentence was improperly influenced by the letter. The court has great leeway in its consideration of the sentence to be imposed. *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). The government cites *United States v. Doyle,* 348 F.2d 715 (2d Cir. 1965), *cert. denied,* 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84, and *United States v. Cifarelli,* 401 F.2d 512 (2d Cir. 1968), *cert. denied,* 393 U.S. 987, 89 S.Ct. 465, 21 L.Ed.2d 448. As defendant points out, *Doyle* involved consideration of other counts of an indictment dismissed as part of a plea bargain on another count. *Cifarelli*

holds, without discussion relying on *Doyle,* that it is proper for a trial judge to consider evidence of other crimes for which the defendant was neither tried nor convicted. Even so there is nothing to indicate in the present case that the experienced trial judge accepted and acted upon the unverified conclusions of a mere letter writer who was not present. We see no reason to disturb the exercise of the court's sentencing discretion, except as to the restitution provision. We consider that provision to be vague in that there is no maximum limitation corresponding to the actual loss caused by the offenses for which conviction was had. The matter appears to have been left to the discretion of the probation department. The condition of probation ordering that "the defendant is to make restitution in such amounts and at such times as directed by the Probation Department" is vacated and the cause remanded for the imposition of such a restitution condition as the court may deem appropriate within the limits of 18 U.S.C. § 3651.

Affirmed in part. The cause is remanded for the purpose of partial resentencing on the special condition of probation.