**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jerard J. SIGNORI,**
**Defendant–Appellant.**

No. 87–1101.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 12, 1988.

Decided April 8, 1988.

Reginald P. Minn, Minn & Ripley, of counsel, Honolulu, Hawaii, for defendant-appellant.

Daniel Bent, U.S. Atty., John F. Peyton, Jr., Asst. U.S. Atty., Honolulu, Hawaii, for plaintiff-appellee.

Before ALDISERT*, WALLACE and SCHROEDER, Circuit Judges.

ALDISERT, Senior Circuit Judge:

This appeal requires us to decide if the district court abused its discretion in refusing to permit the defendant to withdraw his guilty plea. Should we affirm the district court's refusal, we must then decide whether the sentencing order was invalid as a matter of law because the court gave the probation office authority to specify the exact amount and manner of payment of restitution not to exceed a court-ordered maximum. We will affirm the district court's judgment in all respects.

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

## I.

Jerard J. Signori appeals from the district court's judgment of conviction and sentence, entered after he pleaded guilty, for mail fraud, 18 U.S.C. §§ 1341-42, tax evasion, 26 U.S.C. § 7203, and filing false tax documents, 26 U.S.C. § 7206(1). Signori, represented by retained counsel, initially pleaded not guilty, but changed his plea to guilty on the second day of trial pursuant to a plea bargain.

Testimony at the trial began with Mrs. Teressa Black, an elderly widow, who alleged Signori had defrauded her. Black had recovered $83,000 in insurance proceeds when her husband and two sons died. Because she did not feel competent to handle that amount of money, a friend introduced her to Signori, a certified public accountant, for advice. Black said that Signori told her of a new investment opportunity from which she would earn a return of from 20 to 50% in six months. Black gave Signori $10,000 to invest. Several months later, Signori told her that he had a $12,000 check for her as a repayment on the investment. Black never saw the check or received the money. Instead, Signori asked if she would like to make another $10,000 investment, again assuring her that it was safe. Black agreed.

In actuality, Signori had used the first $10,000 as a down payment on a condominium for himself. He used the second $10,000 to buy a motorcycle. A bank employee testified next. She stated that Signori exchanged the first cashier's check he received from Black for another cashier's check payable to him without Black's name on it. A real estate agent testified that Signori gave her this second cashier's check as a down payment on his condominium.

After hearing this highly incriminating testimony, defendant and his counsel entered into plea negotiations with the prosecutor. Signori then announced to the court that he wished to change his plea to guilty as to four counts of the indictment.

At a hearing on the plea agreement, the court asked Signori if he had had ample time to confer with his attorney. Signori replied that he had. In response to the court's next question, Signori said that he was satisfied with his counsel's representation. The court then thoroughly explained

* Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

to Signori the entire panoply of a defendant's rights at trial, and that Signori would waive those rights by pleading guilty. The court discussed each count to which Signori proposed to plead guilty and asked if the defendant had any questions concerning the charges. Signori said, "No. No, I don't."

The court specifically asked Signori if anyone had threatened him or in any way forced him to change his plea to guilty. Signori answered, "No, no one has threatened me." The court then showed the defendant the written plea agreement and asked the defendant if he had read it, understood it, discussed it with his attorney, and signed it. The defendant answered affirmatively to all those questions. Finally, the court asked Signori if he had any questions at all about the plea agreement. Signori had none.

The defendant again announced his intention to plead guilty and the court began a lengthy process of determining, through questions put to Signori, that a factual basis existed to accept the guilty pleas. The court advised the defendant that it would not accept the guilty pleas if he did not admit guilt. Specifically, the judge told Signori that he would have to admit to obtaining money from Black with the intent to defraud her. Signori admitted he had done that. The court thoroughly reviewed the fraud charge with the defendant, and the defendant admitted every element of the offense. Finally, the court reviewed the tax offenses with the defendant. Again, Signori admitted the offenses and pled guilty.

At the sentencing, the district court granted Signori's motion to discharge his attorney and obtain court-appointed counsel. Upon obtaining new counsel, Signori moved to withdraw his guilty pleas, based on the alleged incompetence and misrepresentations of his original lawyer. Signori argued that his attorney had counseled him that a guilty plea may be withdrawn as of right at any time, notwithstanding a statement in the written plea agreement that there was no absolute right to withdraw the guilty plea. In sum, Signori contended

his retained counsel had explained that it was perfectly proper to lie under oath to the judge in order to enter the guilty plea and thereafter change his position to a plea of not guilty with impunity.

The district court denied Signori's motion to withdraw his plea and sentenced him to three years imprisonment for mail fraud, a consecutive one-year term for tax evasion, and a consecutive two-year term for filing false tax documents. The court also ordered Signori to make restitution in the manner provided by the probation department in an amount not to exceed $20,000.

## II.

■ A district court may permit withdrawal of a guilty plea prior to sentencing upon a showing by the defendant of any fair and just reason. Rule 32(d), F.R.Crim. P. It is well-established that a defendant has no right to withdraw his guilty plea, and that a withdrawal motion is committed to the sound discretion of the district court. *United States v. Read,* 778 F.2d 1437, 1440 (9th Cir.1985), *cert. denied,* —— U.S. ——, 107 S.Ct. 131, 93 L.Ed.2d 75 (1986); *United States v. Castello,* 724 F.2d 813, 814 (9th Cir.), *cert. denied,* 467 U.S. 1254, 104 S.Ct. 3540, 82 L.Ed.2d 844 (1984); *United States v. King,* 618 F.2d 550, 551 (9th Cir.1980). Moreover, although a motion to withdraw a guilty plea should be freely allowed, *Kercheval v. United States,* 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927); *United States v. Vasquez–Velasco,* 471 F.2d 294 (9th Cir.), *cert. denied,* 411 U.S. 970, 93 S.Ct. 2163, 36 L.Ed.2d 692 (1973), the defendant has the burden on appeal to show that the district court abused its discretion in denying the motion. *King,* 618 F.2d at 551.

Signori contends on appeal that his guilty plea was invalid due to ineffective assistance of counsel. He also argues that his attorney's affirmative misrepresentations led him to plead guilty under the misapprehension that the plea could be easily withdrawn later and could be utilized to "buy time."

## A.

To demonstrate ineffective assistance of counsel, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Iaea v. Sunn,* 800 F.2d 861, 864 (9th Cir.1986). This test "applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

The Court stated in *Hill* that in the context of guilty pleas, the first part of the *Strickland* test is a reiteration of the test for attorney competence set out in the Court's earlier cases dealing with the voluntariness of guilty pleas. *Id.* at 58, 106 S.Ct. at 370. "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative causes of action open to the defendant.'" *Id.* at 56, 106 S.Ct. at 369 (quoting *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970)); *see also United States v. Read,* 778 F.2d 1437, 1440 (9th Cir.1985), *cert. denied,* — U.S. —, 107 S.Ct. 131, 93 L.Ed.2d 75 (1986). A defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases. *See Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973); *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970).

■ This court has held that the effectiveness of counsel is "a mixed question of law and fact, reviewed *de novo.*" *Iaea,* 800 F.2d at 864. We also review *de novo* the district court's determination as to voluntariness. *Hayes v. Kincheloe,* 784 F.2d 1434, 1436 (9th Cir.1986), *cert. denied,* — U.S. —, 108 S.Ct. 198, 98 L.Ed.2d 150 (1987). However, we will uphold findings of historical or subsidiary facts underlying the court's conclusion of voluntariness unless clearly erroneous. *Id.; see also Iaea,* 800 F.2d at 864. Whether the defendant subjectively understood the consequences of his guilty plea is an underlying factual issue. *Iaea,* 800 F.2d at 864.

## B.

As evidence of his former attorney's incompetence, Signori points out that the district court had chastised counsel for his "unpreparedness." Br. for appellant at 19. However, following the acceptance of the four guilty pleas, the court stated to Signori:

While the jury is not here, Mr. Signori, I want to tell you that at the commencement of these proceedings I chastised your counsel because of his behavior in not submitting documents to this court timely. Those were procedural deficiencies in your counsel's representation of you in his carrying out of his duties in this court.

Since I have had the opportunity to have [your attorney] appear in court and to appear in my chambers, he has conducted himself, I think, in a very proper manner commensurate with the manner required of all officers of the court appearing in the United States District Court; and I want you to know he has done a good job for you.

His obtaining this settlement with the government is quite an achievement.... I think he has done a very, very commendable job for you....

TT at 213.

■ Signori's main argument of ineffectiveness of counsel rests on his allegation that counsel led him to believe he could withdraw his guilty plea. A guilty plea cannot be "induced by ... misrepresentation." *Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970). But the cases cited by defendant all involved proven misrepresentations. *See, e.g., Iaea v. Sunn,* 800 F.2d at 864 (counsel erroneously informed defendant that he was subject to minimum sentencing statute); *Kennedy v. Maggio,* 725 F.2d 269, 272 (5th Cir.1984) (counsel erroneously ad-

vised defendant he could face death penalty at trial); *O'Tuel v. Osborne*, 706 F.2d 498, 499 (4th Cir.1983) (defendant's counsel misinformed him as to parole eligibility if he pled guilty).

In this case, Signori has only his own unsworn contention, made at the time of his plea withdrawal motion under Rule 32(d), that he had been misled by counsel. No Signori affidavit, no Signori deposition accompanied the motion. By affidavit in response to the motion, Signori's original attorney denied each of Signori's unsworn allegations:

> Affiant affirmatively states that at no time throughout his representation of defendant Jerard J. Signori did Affiant either intentionally, knowingly, recklessly, or negligently represent to or infer to defendant Jerard J. Signori that he could enter a plea pursuant to a memorandum of plea agreement as a sham and fraud upon the Court in an effort to obtain additional time . . . .

> Affiant affirmatively states that defendant Jerard J. Signori questioned Affiant regarding the ability to withdraw a guilty plea once it has been entered. Affiant affirmatively responded to defendant Jerard J. Signori that if he intended to enter a guilty plea only to then move the Court at a later date to withdraw that plea, that Affiant under no circumstances would carry forward with the entry of the plea in the first instance.

App. at 123–24.

Because this sworn testimony was not rebutted by any sworn testimony from the defendant, the district court could find as a fact that Signori had not proven misrepresentation or misunderstanding. In denying the motion to withdraw guilty pleas, the court stated "there is ample evidence before the court that the defendant knew what he was doing, that he was fully apprised and advised by both his counsel and the court." Tr. of Rule 32(d) proceeding at 35. These findings are not clearly erroneous.

This court has carefully reviewed the transcript of the Rule 11 hearing at which defendant pled guilty. We have noted the great pains taken by the district court to explain to the defendant his rights and the consequences of pleading guilty, and to ascertain that he understood those rights and consequences. The district court properly determined that defendant entered his pleas freely, voluntarily, knowingly, and intelligently. We are satisfied that the district court did not abuse its discretion in refusing to permit the defendant to withdraw the guilty pleas. We reject Signori's incompetency of counsel contention and turn now to his argument that the probation order was tainted.

### III.

Signori admitted defrauding Black out of $20,000. The plea agreement did not specify that the court would order restitution, but did provide that "the sentence to be imposed is within the sole discretion of the sentencing judge." App. at 45. The district court ordered "that the defendant make restitution in the manner provided by the probation department. Said restitution is to be payable to Teressa Black . . . in an amount not to exceed $20,000.00." App. at 126.

Authority for requiring restitution as a condition of probation is found in 18 U.S.C. § 3651, which provides:

> Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, [the court] . . . may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best.

> . . . .

> While on probation and among the conditions thereof, the defendant . . . [m]ay be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had . . . .

The district court made no reference to a later statute, the Victim and Witness Protection Act of 1982, which provides that a court, "when sentencing a defendant convicted of an offense under [Title 18], may

order, in addition to or in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of such offense." 18 U.S.C. § 3579(a)(1).

■ Effective with respect to offenses occurring after January 1, 1983, the Victim and Witness Protection Act empowers a court, "for the first time, to order payment of restitution independently of probation." *United States v. Barnette*, 800 F.2d 1558, 1571 (11th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1578, 94 L.Ed.2d 769 (1987) (quoting S.Rep. No. 532, 97th Cong., 2d Sess. 30 *reprinted in* 1982 U.S.Code Cong. & Admin.News 2515, 2536).

The case law has established that this Act applies only to offenses occurring after January 1, 1983. *See United States v. Oldaker*, 823 F.2d 778, 781 (4th Cir.1987); *United States v. Martin*, 788 F.2d 184, 188 (3d Cir.1986); *United States v. Forzese*, 756 F.2d 217, 222 (1st Cir.1985); *United States v. Ferrera*, 746 F.2d 908 (1st Cir. 1984). In this case, one offense predicate to the restitution order took place prior to January 1, 1983, the effective date of the statute. The district court simply ordered restitution in the total amount of $20,000, a sum that included the losses due to both offenses.

There is some question as to whether the Victim and Witness Protection Act may be applied to continuing offenses, such as conspiracy or a scheme to defraud, commencing before January 1, 1983, and extending beyond that date. *See, e.g., United States v. Corn*, 836 F.2d 889, 895–96 (5th Cir.1988) (restitution only for losses resulting from acts committed after January 1, 1983); *United States v. Oldaker*, 823 F.2d 778, 781–82 (4th Cir.1987) (restitution only for losses suffered after January 1, 1983); *United States v. Martin*, 788 F.2d 184, 188–89 (3d Cir.1986) (same); *United States v. Purther*, 823 F.2d 965, 968 (6th Cir.1987) (unitary scheme continuing beyond January 1, 1983, triggers the statute for all losses resulting from scheme); *United States v. Barnette*, 800 F.2d 1558, 1571 (11th Cir. 1986) (same).

In the context of the present case, we need not decide this question. The legisla-tive history clearly demonstrates that the new Act was meant to fill a sentencing gap left by section 3651, which "does not contain a provision covering an order of restitution as a part of any sentence other than probation." S.Rep. No. 532, *reprinted in* 1982 U.S.Code Cong. & Admin.News 2536. Congress stated that "[s]ection 3579(a) expands current law by authorizing an order of restitution independent of a condition of probation." *Id.*, 1982 U.S.Code & Admin. News at 2538. While section 3579 could be used to order restitution as part of the sentencing process even in cases involving grants of probation, in this case the district court ordered restitution "as a term and condition of probation." Tr. of sentencing at 52. We shall consider this order as one authorized by the earlier statute, section 3651.

This court has held that section 3651 generally limits restitution to amounts for which the defendant was actually convicted —the actual damages. *See, e.g., United States v. Orr*, 691 F.2d 431, 433–34 (9th Cir.1982). The actual damages requirement is grounded on the need for proving with certainty the amount of loss caused by the offense. *United States v. Gering*, 716 F.2d 615, 625 (9th Cir.1983). The amount of the loss must be established by proof at trial, some other judicial determination, or some consensual means. *Id.*

Signori argues that the restitution order is invalid, apparently contending that the order violates section 3651. He seems to suggest that section 3651 requires the sentencing court to set the specific amount of restitution and the terms of payment, rather than merely setting the maximum amount of restitution and delegating authority to the probation department to set the payment schedule and reduce, if appropriate, the amount of restitution required. The government responds that the statute requires only that the district court set the maximum amount of restitution in light of the actual damages arising from the conviction, and permits the probation department to determine the repayment schedule and, if appropriate, to lower the total amount of restitution to be paid.

The question presented by Signori can be broken down into two subparts. First, does section 3651 empower a district court to set the maximum amount in a restitution order but allow the probation department to reduce the amount in light of the defendant's ability to pay? Second, does section 3651 empower a district court to allow the probation department to determine the timing and manner of restitution payments? Our review of these questions of statutory interpretation is plenary. *See, e.g., United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

### A.

■ In support of his argument that section 3651 requires the district court to set the actual amount of restitution, Signori relies on cases from the Courts of Appeals for the Fifth, Seventh, and Eighth Circuits. *See Dougherty v. White,* 689 F.2d 142, 145 n. 1 (8th Cir.1982); *United States v. Runck,* 601 F.2d 968, 969 n. 2 (8th Cir. 1979), *cert. denied,* 444 U.S. 1015, 100 S.Ct. 665, 62 L.Ed.2d 644 (1980); *United States v. Shelby,* 573 F.2d 971, 976 (7th Cir.), *cert. denied,* 439 U.S. 841, 99 S.Ct. 132, 58 L.Ed. 2d 139 (1978); *United States v. Mancuso,* 444 F.2d 691, 695 (5th Cir.1971); *United States v. Hoffman,* 415 F.2d 14, 21 (7th Cir.), *cert. denied,* 396 U.S. 958, 90 S.Ct. 431, 24 L.Ed.2d 423 (1969). The cited decisions, however, do not support the defendant's position. In *Dougherty,* the court stated in dicta that it is a "better practice" for the sentencing court to set the amount of restitution, rather than leave it to the probation office. *Dougherty,* 689 F.2d at 145 n. 1. Similarly, in *Runck,* the court examined a district court order that did not specify an amount, but instead merely stated that the defendant "would make restitution as directed by the probation office." *Runck,* 601 F.2d at 969. Again in dicta, the court stated that "it is a better practice for the court to specify the amount of restitution rather than leave this decision to the probation office." *Id.* at n. 2. The *Shelby* and *Hoffman* decisions stand only for the proposition that section 3651 requires a district court to determine the

actual damages or loss caused before ordering restitution. *See Shelby,* 573 F.2d at 976; *Hoffman,* 415 F.2d at 21–23.

The *Mancuso* decision may also be distinguished. There, the district court had ordered "that the defendants make full restitution of the amounts shown in the indictment as calculated and scheduled by the probation officer." *Mancuso,* 444 F.2d at 693. The reviewing court said that the restitution provision was "vague," and that a restitution order "must be clear and unequivocal." *Id.* at 695. The court suggested that "[t]he better practice is that where parties are aggrieved, the amounts to be paid and the manner of payment should be recited in the order, rather than delegating these details to the probation officer." *Id.* But in *Mancuso,* the district court merely stated that the amount of restitution would be for "the amounts shown in the indictment." *Id.* at 693. The amount was not based on damages ascertained at trial, at some other hearing, or by some consensual means. *See Gering,* 716 F.2d at 625. Here, contrary to *Mancuso,* Signori expressly admitted that he defrauded Mrs. Black out of $20,000. There was no vagueness as to the actual damages.

In sum, none of the cases cited by the defendant address whether the district court may set the maximum amount of restitution based on the actual damages, but allow the probation department in its discretion to reduce that amount.

### B.

■ *Mancuso,* however, does address the second subpart of our question, and indicates that section 3651 requires the district court's order of restitution to recite the manner of payment. Nevertheless, we determine that the district court did not improperly delegate to the probation office the task of determining the method of payment of the restitution. For the following reasons, we decline to accept the interpretation suggested in *Mancuso.*

This court has previously examined circumstances where a district court imposed a probation condition that provided an up-

per limit on the amount of restitution, but delegated to the probation department the power to require as much restitution as possible in light of the defendant's assets and income while on probation. *See United States v. Koenig*, 813 F.2d 1044, 1046 (9th Cir.1987). In *Koenig*, the defendant had been indicted on thirty-one counts of mail fraud in a scheme wherein he and two accomplices obtained between five and eight million dollars. The defendant agreed to plead guilty to two counts of fraud and also agreed to make restitution in an amount that would exceed the losses in the two counts to which he pled guilty if that was "possible within the evaluation of the probation department." *Id.* at 1045. Under the agreement, the probation office would determine the actual amount of restitution. The district court accepted the plea, sentenced the defendant, and as a special condition of probation, ordered that the defendant "1) ... make full and complete restitution in an amount not to exceed $5 million, by surrender of all present assets, less $10,000.00, and by the payment of 65% of any future earnings; 2) ... sign Confessions of Judgment for any unsatisfied restitution claim, as directed by the probation officer; and 3) ... make a full and complete financial disclosure to the probation officer every month." *Id.* at 1046. On appeal, we rejected the defendant's challenge to the restitution order.

*Koenig* is significant because in that case we approved a restitution order that imposed a maximum limitation and delegated authority to the probation department to determine the actual amount and administer collection of the restitution. *See also Phillips v. United States*, 679 F.2d 192, 194 (9th Cir.1982) (approving restitution order of $6,000 that required the defendant to pay restitution as "determined by the probation department").

The result in *Koenig* supports our acceptance of the district court's order here. That the plea bargain in *Koenig* expressly provided for restitution is not critical. The issue is whether, under the statute, the district court could delegate specific authority to the probation department. We are not inclined to accept the requirement

in *Mancuso* that the district court's order include the exact amount to be paid and the manner of payment. This is a crabbed interpretation of the statute, and we have already implicitly rejected such a requirement. *Koenig*, 813 F.2d at 1046; *Phillips*, 679 F.2d at 194, 196. Moreover, *Mancuso* ignores that, pursuant to the statute, the district court is empowered to "revoke or modify any condition of probation," including restitution, during the probationary period. 18 U.S.C. § 3651. To the extent that Signori is concerned that the probation department may abuse its delegated authority, he may always bring the probation department's orders concerning restitution to the attention of the district court and seek a modification of any order.

Accordingly, we interpret section 3651 as permitting the probation order entered by the district court.

### IV.

For the foregoing reasons, we will affirm Signori's conviction and sentence.

AFFIRMED.