**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Melinda BARANY,
Defendant–Appellant.**

**No. 88–1090.**

United States Court of Appeals,
Ninth Circuit.

Argued April 4, 1989.

Submitted April 25, 1989.

Decided Sept. 7, 1989.

David J. Simon, Mill Valley, Cal., for defendant-appellant.

Rodolfo M. Orjales, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before POOLE, REINHARDT and O'SCANNLAIN, Circuit Judges.

POOLE, Circuit Judge:

Melinda Barany appeals her conviction by a jury on three counts of mail fraud, 18 U.S.C. § 1341, alleging that the variance between the indictment and the proof at trial violated her right to a unanimous jury verdict. She further contends that the district court's restitution order is impermissibly vague and that any requirement of restitution should be limited to the amount of loss charged in the indictment.

## I.

In November 1983, Barany's apartment was allegedly burglarized over the Thanksgiving weekend while she was away. She submitted a claim for the stolen items to her insurance company, American Star, which paid her claim in full in two drafts of $12,162.50 and $40,000.

In 1985 Barany had personal property coverage from Hartford Insurance Company. She reported another burglary after being away for the Thanksgiving weekend. After notifying the police, she prepared an insurance loss notice claiming that approximately $92,000 worth of personal property had been stolen from her apartment. Hartford paid her an initial $10,000 advance, but then became suspicious of her claims and withheld further payments.

In September 1986 Barany filed a civil action against Hartford alleging breach of contract and bad faith for delaying action on her claim. Apparently that case is still pending in state court at this writing.

On June 2, 1987 an indictment was returned charging Barany with a scheme to defraud her insurance companies by filing fraudulent claims. It alleged five counts of mail fraud in violation of 18 U.S.C. § 1341. The scheme was outlined in prefatory language that preceded the text of Count 1. It referred to a period commencing in 1983 and ending in early 1986. Counts 1 and 2 alleged that Barany had used the mails to receive the two drafts issued by American Star in connection with the 1983 incident. Counts 3, 4 and 5 alleged that she had used the mails to send the notice of loss, to receive the $10,000 advance from Hartford and to send a contents inventory for the alleged burglary in 1985.

The government dismissed Count 2 at the beginning of trial. After a four day trial, the jury found Barany not guilty of Count 1 and guilty of Counts 3, 4 and 5. The trial judge sentenced her to two one-year sentences to be served concurrently on Counts 3 and 4. On Count 5, an additional one year sentence was suspended and Barany ordered placed on probation for five years following her release from custody. As a condition of her probation, the court ordered Barany to make restitution "under the direction of the Probation Office."

Barany now appeals her conviction and sentence. We have jurisdiction under 28 U.S.C. § 1291.

## II.

The indictment charged Barany with devising a scheme "in which certain insurance companies were induced into issuing insurance checks to defendant for losses due to residential burglaries falsely reported by defendant." The claims made to American Star in 1983 and Hartford in 1985 were alleged to be parts of this scheme. The jury found her guilty only of those counts relating to the 1985 incident.

The appellant contends that her right to a unanimous jury verdict guaranteed by Article III, § 2 of the Constitution and the Sixth Amendment was violated because the indictment alleged a single scheme, while the evidence presented at trial could be interpreted as proving one overall scheme or two separate schemes to defraud. She claims that this variance between the allegations of the indictment and the proof raised a substantial danger of jury confusion which prejudiced her right to a fair trial. She relies primarily upon several cases in which we reversed convictions because it could not be said with certainty that all of the jurors had found the defendant guilty of the same criminal offense.

The cases cited by appellant all involved broadly written indictments which could be read to encompass a single or multiple con-

spiracies. For example, in *United States v. Echeverry*, 698 F.2d 375, *modified* 719 F.2d 974 (9th Cir.1983), the defendant was charged with conspiracy to distribute cocaine between December 1980 and June 1981. At trial, evidence was offered of cocaine sales that occurred in December 1980 and June 1981. The defendant was convicted and on appeal, we wrote that

> [w]e have no means by which we may be certain that some portion of the jury, in casting a guilty ballot, did not envision a December conspiracy and failed to find enough evidence to believe that there was a June conspiracy, while other jurors envisioned a June conspiracy and not a December conspiracy. We are not free to hypothesize whether the jury indeed agreed to and was clear on the duration of a single conspiracy or of multiple conspiracies.

*Id.* at 377. Given the ambiguity inherent in the conspiracy charge, we held that the district court should have specifically instructed the jury that they must unanimously agree on the dates of any conspiracy in which they found the defendant had participated. The failure to do so constituted reversible error. *Id.*

Similarly, in *United States v. Gordon*, 844 F.2d 1397 (9th Cir.1988) and *United States v. Mastelotto*, 717 F.2d 1238 (9th Cir.1983), each count of the indictments charged the defendants with more than one scheme to defraud. It was quite possible that a divided jury—some finding guilt on one theory, others on a different theory—could nevertheless agree to a guilty verdict on each count. In both cases we concluded that in the absence of a corrective instruction that the jurors must agree on the existence of the same scheme to defraud, the danger of a nonunanimous jury verdict warranted reversal.

■ In this case, no reasonable possibility of a nonunanimous jury verdict existed. Although the indictment overall alleged a scheme to defraud which encompassed both the 1983 and 1985 insurance claims, each count charged in the indictment was sufficiently precise as to be susceptible of only one interpretation. By acquitting Barany of Count 1 and convicting her of Counts 3, 4 and 5, the jury clearly concluded that the government had not sustained its burden of proving that the 1983 claim was false, but agreed with the government that the 1985 claim was fraudulent.

■ The mere fact that Barany was convicted of a fraudulent scheme more limited in scope, but wholly included in the scheme alleged in the indictment does not violate her rights. *United States v. Miller*, 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985). Because the jury verdict was undoubtedly a unanimous one, any variance which might arguably exist between the indictment and the proof at trial would not be such as to prejudice Barany's rights.

### III.

We have difficulty with the district court's restitution order which Barany also challenges. The judgment states that "as a special condition of probation, the defendant shall make restitution under the direction of the Probation Office." It makes no further mention of the amount or terms of the restitution imposed.

At the sentencing hearing, the district court inquired into the possibility of ordering restitution. In the presentence report, the probation officer had estimated that Hartford was owed $94,393 in restitution. This figure was calculated by adding the $10,000 advance Hartford had paid Barany on her 1985 claim and $84,393 in attorney's fees and costs which Hartford spent defending against her civil suit.

In announcing Barany's sentence the court ordered "that she make restitution under the direction of the probation officer of this court." When both the probation officer and the attorney for the government asked for clarification, the court specifically declined to adopt the amount suggested in the sentencing report. Instead, the court stated that it was giving "broad authority" to the probation officer "to require proper restitution based upon her ability to pay."

The appellant contends that such a restitution order is impermissibly vague be-

cause the district court never determined the amount to be paid. In addition, she argues that restitution cannot exceed $10,-000, the amount of Hartford's loss charged in the indictment.

■ We review the legality of a sentence *de novo. United States v. Youpee,* 836 F.2d 1181, 1182 (9th Cir.1988). If a sentence is within statutory limits, however, we review for abuse of discretion. *Id.*

A threshold question in determining the validity of the restitution order is whether it was entered pursuant to the Federal Probation Act, 18 U.S.C. § 3651 (the Probation Act), or the Victim and Witness Protection Act, 18 U.S.C. §§ 3663, 3664 (formerly §§ 3579, 3580) (the VWPA). The Probation Act, which was repealed effective November 1, 1987, authorized the imposition of restitution as a condition of probation. The VWPA, effective January 1, 1983, does not limit restitution to cases involving probation, but permits a court to order restitution as a part of sentencing in any criminal case. Barany was convicted of offenses committed between January 1, 1983 and November 1, 1987, when both statutes were in effect. Because the district court's restitution order could have been entered under either the Probation Act or the VWPA, we examine its legality under both statutes.

### A.

Under the Probation Act, a probationer "may be required to make restitution or reparation to aggrieved parties *for actual damages or loss* caused by the offense for which conviction was had." 18 U.S.C. § 3651 (emphasis added). We have held that the Probation Act

> limits restitution to amounts for which the defendant was actually convicted— the actual damages. The actual damages requirement is grounded on the need for proving with certainty the amount of loss caused by the offense. The amount of the loss must be established by proof at trial, some other judicial determination, or some consensual means.

*United States v. Signori,* 844 F.2d 635, 640 (9th Cir.1988) (citations omitted).

We have reversed restitution orders under the Probation Act where the amount of the restitution exceeded the damages alleged in the counts of which the defendant was convicted. For example, in *United States v. Gering,* 716 F.2d 615 (9th Cir. 1983), we held that the district court erred in ordering $22,757.67 in restitution where the defendant had been convicted of offenses charging only $739.00 in losses to his victims. *Id.* at 625. *See also United States v. Black,* 767 F.2d 1334 (9th Cir.) (reversing restitution order of $787,000 where defendant convicted of mail fraud counts alleging only $46,250 loss), *cert. denied* 474 U.S. 1022, 106 S.Ct. 574, 88 L.Ed.2d 557 (1985); *United States v. Orr,* 691 F.2d 431 (9th Cir.1982) (reversing restitution order of $3,815 where defendant pled guilty to two counts of embezzlement totaling $200).

■ Where the indictment does not allege a specific monetary loss, a court may nevertheless impose restitution under the Probation Act so long as the amount is established through some method of judicial determination or by agreement of the parties. *Gering,* 716 F.2d at 625 (amount of loss must be established through judicial determination or consensual means). For example, in *Phillips v. United States,* 679 F.2d 192 (9th Cir.1982), we upheld a probation order requiring the defendant to pay $6000 in restitution. Although none of the counts to which Phillips pled guilty stated a specific amount of monetary loss, he had consented to the restitution amount as a part of a plea agreement. *Id.* at 194. Similarly, in *Signori, supra,* we approved a restitution order of $20,000 after the defendant expressly admitted that he had defrauded his victim of that amount.

In *Signori,* as in this case, the court granted the probation office broad discretion to determine the manner and amount of the restitution payments in light of the defendant's ability to pay. Unlike this case, however, the court in *Signori* set a maximum amount of restitution based upon the actual damage to the victim as estab-

lished through the defendant's admission. We held that once the court has fixed the maximum amount of restitution, the Probation Act permits delegating authority to the probation office to determine the timing and manner of payments. 844 F.2d at 641–42.

■ At a minimum, then, the Probation Act requires the district court to determine with certainty the actual damages resulting from the defendant's offenses and to fix the maximum amount of restitution in light of that loss. The amount may be established by the defendant's admission, the proof at trial, or by a finding by the court, but it must be judicially determined. While the court may delegate questions concerning the defendant's ability to pay and the timing and manner of payment to the probation officer, fixing the damage or loss resulting from defendant's conduct is the trial court's responsibility.

### B.

The VWPA provides that in cases involving damage to or loss of property, a court may require a convicted defendant to

(A) return the property to the owner of the property or someone designated by the owner; or

(B) if return of the property under subparagraph (A) is impossible, impractical, or inadequate, pay an amount equal to the greater of—

(i) the value of the property on the date of the damage, loss, or destruction, or

(ii) the value of the property on the date of sentencing,

less the value (as of the date the property is returned) or any part of the property that is returned.

18 U.S.C. § 3663(b)(1). The court is given the responsibility of determining "whether to order restitution ... and the amount of such restitution." 18 U.S.C. § 3664(a). "Any disputes as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence." 18 U.S.C. § 3664(d).

Under the VWPA we have permitted restitution exceeding the amounts alleged in the charging instrument where the defendant has been convicted of a scheme to defraud and not all of the victims are named in the indictment or information. *United States v. Pomazi*, 851 F.2d 244, 250 (9th Cir.1988). However, the court's discretion in ordering restitution is not unlimited. "The amount of restitution ... must be definite and limited by the amount actually lost by the victims." *Id.* In addition, the court must be able positively to identify each victim to whom restitution is ordered. *Id.* And finally, "the amount of restitution ordered must be judicially established, with the defendant afforded an opportunity to refute the amount ordered." *United States v. Angelica*, 859 F.2d 1390, 1395 (9th Cir.1988). *See also United States v. Cloud*, 872 F.2d 846, 855 (9th Cir.1989).

We have held that the same reasoning which limits restitution under the Probation Act to "losses directly resulting from the defendant's offenses" also applies when interpreting the VWPA. *United States v. Kenney*, 789 F.2d 783 (9th Cir.), *cert. denied* 479 U.S. 990, 107 S.Ct. 586, 93 L.Ed.2d 588 (1986). In *Kenney*, the district court ordered a defendant convicted of bank robbery to pay $1380 in restitution to compensate the bank for the salaries paid to its employees who testified at trial. We reversed the restitution order, holding that the loss the bank incurred because its employees testified was "too remote" from the defendant's actions to provide a basis for restitution under the VWPA. *Cf. United States v. Tyler*, 767 F.2d 1350, 1351 (9th Cir.1985) (decline in value of stolen timber "too remote" a loss to form basis for restitution under Probation Act).

■ Thus, the VWPA, like the Probation Act, authorizes restitution in an amount pegged to the *actual* losses suffered by the victims of the defendant's criminal conduct. Our decisions, as well as the very language of the VWPA, squarely place the responsibility for determining that amount on the sentencing court.

## C.

In this case, the district court made no findings regarding the loss suffered by Hartford as a result of Barany's fraudulent claim. Instead, it vested unlimited discretion in the probation office to determine the amount and nature of restitution, leaving open the possibility that Barany might be required to pay even more than the $94,393 suggested in the presentence report. The government concedes, as it must, that the district court's failure to establish the amount of restitution requires a remand to have this done.

In determining the appropriate amount of restitution, the district court should not accept uncritically an amount recommended by the probation office. Both the Probation Act and the VWPA require a sentencing court to establish the losses resulting from defendant's conduct as a basis for ordering appropriate restitution. It would be an abdication of judicial responsibility simply to adopt a suggested figure without making an independent determination that the amount actually reflects the damages suffered by the victim.

Barany contends that the restitution award may not exceed $10,000, the amount of Hartford's loss as charged in the indictment. The government argues that the restitution order may properly include the $84,393 in attorney's fees and costs Hartford incurred defending Barany's civil suit. While the VWPA does not limit restitution to the amounts specified in the indictment, *Pomazi, supra,* the obligation must be based upon losses directly resulting from the defendant's criminal conduct. The Probation Act similarly limits a restitution award to "actual damages." In this case, the amount of resources Hartford chose to expend in defending the civil suit is only tangentially related to the defendant's original offenses. We conclude that Hartford's attorney's fees, like the bank employees' salaries in *Kenney,* are "too remote" from Barany's criminal conduct to serve as a basis for restitution under either statute.

Moreover, the district court in the criminal case is clearly without authority to award attorney's fees in a wholly separate civil suit still pending in a state court. The general rule in the United States is that litigants must pay their own attorney's fees. *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). While some courts allow a defendant to recover attorney's fees where the plaintiff's suit is frivolous, vexatious or wholly without foundation, such an award is properly left to the sound discretion of the trial court. Hartford's quest for recovery of its attorney's fees should be directed to the court in the civil case which is best positioned to evaluate such a request. Being remote from knowledge of the course of the proceedings and of the complexity of the issues in the civil case, the district court cannot easily judge the reasonableness of the hours claimed or the rates charged by Hartford's attorneys. Accepting the probation officer's recommendation would result in Hartford's obtaining an award of attorney's fees for a wholly separate civil case, bypassing entirely the jurisdiction of the state court presiding over that case. We believe that neither of our two cited statutes contemplated such a result. We conclude that Hartford's attorney's fees may not properly be included in the restitution order.

## IV.

The indictment charging Barany with mail fraud was sufficiently precise to insure a unanimous jury verdict. Any variance which might exist between the indictment and the proof at trial did not prejudice her Sixth Amendment rights and therefore, her conviction is affirmed. Because the district court failed to determine the appropriate amount of restitution based upon the losses actually resulting from her criminal conduct, we vacate so much of the sentence and judgment as ordered restitution and remand for reconsideration in light of this opinion.