**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

PASCUAL DIONICIO JERONIMO,
*Defendant-Appellant.*

No. 03-30394

D.C. No.
CR-02-60067-1-
MRH

OPINION

Appeal from the United States District Court
for the District of Oregon
Michael R. Hogan, Chief District Judge, Presiding

Argued and Submitted
September 13, 2004—Portland, Oregon

Filed February 23, 2005

Before: J. Clifford Wallace, Ronald M. Gould, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Gould;
Dissent by Judge Berzon

**COUNSEL**

Richard L. Fredericks, Eugene, Oregon, for the defendant-appellant.

Karin J. Immergut, United States Attorney, District of Oregon, and Frank R. Papagni, Jr., Assistant United States Attorney, District of Oregon, for the plaintiff-appellee.

**OPINION**

GOULD, Circuit Judge:

We consider whether a plea agreement is enforceable and effectively waives the right of appeal. We conclude that we are without jurisdiction to assess the merits of this direct appeal.

**I**

In July 2002, Pascual Dionicio Jeronimo ("Jeronimo") faced a potential maximum sentence of thirty years imprisonment for various drug trafficking offenses when he entered into plea negotiations with the government. Through his former attorney, John Kolego ("Kolego"), Jeronimo reached a plea agreement on November 1, 2002, whereby the government agreed to dismiss some of his pending charges, recommend downward departure and a sentence at the low end of the applicable guideline range, refrain from seeking an

upward departure, and reduce his maximum potential sentence to twenty years. In return, Jeronimo agreed to plead guilty to two counts of drug trafficking, admit to specific drug quantities, forfeit his interest in certain property, and to waive his rights to appeal and to collaterally attack the length of his sentence. Both Jeronimo and Kolego signed the plea agreement. Immediately above Jeronimo's signature in capital letters was the following statement:

> I HAVE READ OR HAD READ AND TRANS-LATED TO ME IN SPANISH BY AN INTERPRETER, THIS AGREEMENT AND HAVE CAREFULLY REVIEWED EVERY PART OF IT WITH MY ATTORNEY.
>
> I UNDERSTAND AND VOLUNTARILY AGREE TO IT AND PROMISE TO ABIDE BY EVERY TERM.
>
> I VOLUNTARILY SIGN THIS AGREEMENT WITH THE FULL UNDERSTANDING OF ALL OF THE ABOVE.

At Jeronimo's change of plea hearing, which also took place on November 1, 2002, the district court dutifully conducted a comprehensive plea colloquy with Jeronimo that embraced all disclosures and inquiries required by Rule 11 of the Federal Rules of Criminal Procedure.[1] Among these dis-

---

[1] On November 1, 2002, Federal Rule of Criminal Procedure 11 provided in pertinent part:

> (c) Advice to Defendant. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:
>
> > (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the

closures was the district court's explicit advice to Jeronimo that "the maximum penalty [under his plea agreement was] 20

---

effect of any special parole or supervised release term, the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances, and, when applicable, that the court may also order the defendant to make restitution to any victim of the offense; and

(2) if the defendant is not represented by an attorney, that the defendant has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent the defendant; and

(3) that the defendant has the right to plead not guilty or to persist in that plea if it has already been made, the right to be tried by a jury and at that trial the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, and the right against compelled self-incrimination; and

(4) that if a plea of guilty or nolo contendere is accepted by the court there will not be a further trial of any kind, so that by pleading guilty or nolo contendere the defendant waives the right to a trial; and

(5) if the court intends to question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant has pleaded, that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement; and

(6) the terms of any provision in a plea agreement waiving the right to appeal or to collaterally attack the sentence.

(d) Insuring That the Plea is Voluntary. The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the government and the defendant or the defendant's attorney.

Rule 11 was amended in December of 2002.

years in prison and a fine of up to $1 million." Jeronimo in response assured the district court that he had discussed the federal Sentencing Guidelines with Kolego, and that he was satisfied with Kolego's help. When asked if his plea was "freely and voluntarily made with a good understanding of the nature of the charges against [him] and the matters in [the] plea petition and plea bargain letter," Jeronimo said "yes."

Before the court's acceptance of the plea, the prosecutor interjected comments alerting Jeronimo that the government was planning to bring his prior drug and felony assault convictions, as well as his status as an illegal alien and a prison escapee, to the court's attention during sentencing. When the court asked Jeronimo if he understood that these facts would "likely affect [his] sentence," Jeronimo responded "yes." The court accepted his plea.

The United States Probation Office issued its Presentence Report and Sentencing Recommendation on December 10, 2002. Because of his previous convictions for felony assault and drug trafficking, Jeronimo was classified as a career offender with an applicable Sentencing Guidelines range of 151-88 months of imprisonment.

On March 6, 2003, Jeronimo moved through Kolego to withdraw his guilty plea on the grounds that "he [did] not believe that he was adequately advised as to the potential sentencing consequences prior to his change of plea and [did] not feel his plea was intelligently and knowingly made." On March 17, 2003, Jeronimo filed a separate pro se "Motion to Withdraw Plea of Guilty Due to Inadequate and Fraudulent Representation By Legal Counsel" alleging that Kolego "on several occasions distorted facts as well as misled for the purpose of extracting a 'Guilty' plea." He also alleged that Kolego "repeatedly changed and lied about possible sentences after [the] plea of 'Guilty' was entered."

On May 27, 2003, Richard Fredericks ("Fredericks") was appointed as Jeronimo's new attorney. On August 14, 2003,

Fredericks filed a Memorandum in Support of Motion to Withdraw Guilty Plea on Jeronimo's behalf, asserting that Jeronimo was "deprived . . . of the opportunity to make an intelligent and voluntary decision" because he allegedly pleaded in reliance on Kolego's erroneous prediction that he would receive a sentence of 87 months.

At a hearing on his plea withdrawal motion, Jeronimo testified that he had many discussions with Kolego about "the merits of the plea offer" and the Sentencing Guidelines, and that his "understanding" based on these discussions was that he would receive a sentence of 87 months as Kolego "predict[ed]." Jeronimo also testified that Kolego never raised the possibility of "career offender" sentencing during any of their discussions and that he would not have accepted the plea offer if he had known that he would receive a sentence of 151 months.

On cross-examination, Jeronimo continued to assert that he had "made a deal" with Kolego, stating: "I trusted in him . . . and I signed for 87 months. When I realized that the sentence was longer, if I had realized, if I known that, I wouldn't have sign[ed] it." However, he conceded that he entered his plea with the understanding that his sentencing would be up to the judge, not Kolego. Jeronimo also admitted that "the deal that [he] made with his lawyer did not include what this judge was going to sentence [him] to"; that the government had warned him at his change of plea hearing that his prior convictions would be raised at sentencing, and the district court had observed that those facts would "likely affect the extent" of his sentence; that he had pleaded guilty with the understanding that he could receive a sentence of up to twenty years; and that he had received the benefit of his bargain because 151 months was less than twenty years.

In denying Jeronimo's motion to withdraw his plea, the district court noted that Jeronimo's argument that his defense attorney "blew the career offender issue" was "made without

evidence from the attorney," and that "even if that was the case . . . a perfect attorney doesn't exist." This timely appeal followed.

## II

We lack jurisdiction to entertain appeals where there was a valid and enforceable waiver of the right to appeal. *United States v. Vences*, 169 F.3d 611, 613 (9th Cir. 1999) ("It would overreach our jurisdiction to entertain an appeal when the plea agreement effectively deprived us of jurisdiction."). We review de novo whether a defendant has waived his right to appeal by entering into a plea agreement and the validity of such a waiver. *United States v. Ventre*, 338 F.3d 1047, 1051 (9th Cir. 2003). A defendant's waiver of his appellate rights is enforceable if (1) the language of the waiver encompasses his right to appeal on the grounds raised, and (2) the waiver is knowingly and voluntarily made. *United States v. Joyce*, 357 F.3d 921, 922 (9th Cir. 2004); *United States v. Martinez*, 143 F.3d 1266, 1270-71 (9th Cir. 1998).

## A

[1] We first must address the issue of whether Jeronimo's waiver of his right to appeal precludes his challenge on direct appeal to the district court's rejection of his request to withdraw his guilty plea, based on his assertion that fair and just reasons supported a change of plea. "Our analysis begins with the fundamental rule that plea agreements are contractual in nature and are measured by contract law standards." *United States v. Clark*, 218 F.3d 1092, 1095 (9th Cir. 2000) (internal citation and quotation marks omitted). This customary reliance on contract law applies to interpretation of an appeals waiver within a plea agreement, and we will generally enforce the plain language of a plea agreement if it is clear and unambiguous on its face. *United States v. Nunez*, 223 F.3d 956, 958 (9th Cir. 2000); *see also Martinez*, 143 F.3d at 1271.

**[2]** In *Martinez*, the defendant entered into a plea agreement with language similar to that here. The *Martinez* plea agreement provided that "[a]ny plea of guilty entered by Defendant pursuant to this agreement and any judgment and/or sentence based thereon . . . will not be the subject of legal challenge by Defendant." 143 F.3d at 1270. In rejecting the defendant's attempt to appeal his sentence on the grounds that the district court had misapplied the Sentencing Guidelines, we held that the defendant's "waiver of any 'legal challenge' encompasses all appeals on all grounds except for a few narrow exceptions,[2] none of which apply here." *Id.* at 1271. Similarly, in *Nunez* we held that an agreement stating that the defendant "knowingly and voluntarily waive[s] his right to appeal any sentence imposed by the Court" constituted an "unmistakable" waiver of the right to appeal. 223 F.3d at 958 (internal quotation marks omitted).

**[3]** Here, Jeronimo's agreement provides in pertinent part that:

> By accepting the benefits of this agreement and if sentenced by the Court to a term of imprisonment of

---

[2]There are a few well-established exceptions to appeal waivers under our case law. For example, a waiver of appeal will not bar an appeal where the defendant's guilty plea was not taken in compliance with Rule 11 of the Federal Rules of Criminal Procedure. *United States v. Portillo-Cano*, 192 F.3d 1246, 1252 (9th Cir. 1999) (holding that waiver of right to appeal will not preclude an appeal where defendant's plea allocution did not conform to the requirements of Rule 11). We have also held that where a judge advises a defendant, without qualification, that he or she has a right to appeal, the defendant will be deemed to have such a right even though it was waived in the plea bargain. *United States v. Buchanan*, 59 F.3d 914, 917-18 (9th Cir. 1995). Additionally, a defendant can appeal his or her sentence notwithstanding a waiver of the right to appeal where the sentence imposed violates the law, *United States v. Littlefield*, 105 F.3d 527, 528 (9th Cir. 1996), or is not in accordance with the negotiated agreement. *United States v. Bolinger*, 940 F.2d 478, 480 (9th Cir. 1991). However, we do not consider whether these exceptions apply here because they were not raised in Jeronimo's appeal.

> less than the statutory maximum of 20 years, Mr. Jeronimo waives **any and all** rights to appeal, and all his waivable statutory rights to file a petition pursuant to 28 U.S.C. § 2255 challenging the length of his sentence.

This language plainly states that Jeronimo waived his right to appeal his sentence on *any and all* grounds in exchange for a sentence of less than twenty years and various other benefits under the agreement. Thus, based on *Martinez* and *Nunez*, we conclude that Jeronimo's plea agreement clearly encompasses his right to bring the present appeal.

Jeronimo contends that the waiver language only covers his right to appeal on the grounds that his sentence was improper or violated the terms of the plea agreement; he argues that we have jurisdiction because the waiver does not specifically preclude him from appealing on the grounds that the district court abused its discretion. However, we dismissed a similar argument in *United States v. Schuman*, 127 F.3d 815, 817 (9th Cir. 1997), where the appellant asserted that a plea agreement providing that he "waive[d] . . . any right to appeal or collaterally attack the conviction and sentence" did not preclude him from challenging the district court's application of the federal Sentencing Guidelines because the agreement failed to "specifically address his statutory right to appeal" on that basis. There we stated: "We reject [the appellant's] contention that the language of the plea agreement does not specifically contemplate the statutory right to appeal incorrect applications of the Sentencing Guidelines for it would render the waiver meaningless." *Id.* Accordingly, while Jeronimo's plea agreement does not specifically contemplate the possibility of an appeal based on the district court's denial of a motion to withdraw, its broad language clearly bars him from bringing this appeal.

**B**

**[4]** Having concluded that Jeronimo's waiver included the appeal he now advances, we next consider whether his waiver

was knowing and voluntary. We follow the rule that a waiver of the right to appeal is knowing and voluntary where the plea agreement as a whole was knowingly and voluntarily made. As we stated in *Portillo-Cano*:

> [W]aivers of appeal must stand or fall with the agreement of which they are a part. If the agreement is voluntary, and taken in compliance with Rule 11, then the waiver of appeal must be honored. If the agreement is involuntary or otherwise unenforceable, then the defendant is entitled to appeal.

192 F.3d at 1250 (internal quotation marks and citation omitted).

[5] At least on its face, the district court's extensive Rule 11 colloquy with Jeronimo shows that Jeronimo's plea was knowingly and voluntarily made. The district court properly advised Jeronimo of the nature of the drug charges against him, the consequences of conviction, and the constitutional rights he was waiving by pleading guilty. The district court also summarized each of the terms of Jeronimo's plea agreement, including the appeal waiver provision, and informed Jeronimo that his maximum possible penalty under the agreement was 20 years imprisonment and a fine of $1 million. Noting that the government would bring "relevant facts" to its attention, the district court further advised Jeronimo that it could depart from the applicable Sentencing Guidelines ranges for various reasons and told him not to rely on sentencing predictions made by others because "the judge decides the sentence."

Jeronimo responded by acknowledging that he had discussed the Sentencing Guidelines with Kolego, and assuring the district court that his plea was "freely and voluntarily made." Finally, when the government warned that it would raise Jeronimo's prior convictions and status as an illegal alien and prison escapee at sentencing, the district court asked

Jeronimo if he understood that such facts would "likely affect [his] sentence," and Jeronimo said "yes."

Nonetheless, Jeronimo claims that his attorney's failure to advise him of all the possible consequences of a guilty plea deprived him of the information necessary to render his plea — and the waiver of appeal contained therein — truly knowing and voluntary.[3]

To demonstrate ineffective assistance of counsel, a defendant must show: (1) that his counsel's performance was deficient; and (2) that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This test applies to challenges to guilty pleas based on ineffective assistance of counsel claims. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

We first consider whether counsel Kolego's performance is shown to be deficient on the record before us. "A defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of his guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases." *United States v. Signori*, 844 F.2d 635, 638 (9th Cir. 1988). Because of the difficulties in evaluating attorney performance in hindsight, courts considering ineffective counsel claims "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Here, the main thrust of Jeronimo's ineffective assistance of counsel claim is that his attorney's failure to consider and inform him of the possibility that he might be sentenced as a career offender constituted a "misrepresentation" that justifies withdrawal of his plea.

---

[3]Effectiveness of counsel is a mixed question of law and fact, reviewed de novo. *United States v. Alaimalo*, 313 F.3d 1188, 1191 (9th Cir. 2002).

A guilty plea cannot be "induced by . . . misrepresentation." *Signori*, 844 F.2d at 638 (quoting *Brady v. United States*, 397 U.S. 742, 755 (1970)). We have also held that a defendant who pleads guilty in reliance on his or her attorney's "gross mischaracterization of the likely outcome" of his or her case may be entitled to withdraw the plea on ineffective assistance of counsel grounds. *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986); *see also Michlin v. Walker*, 34 F.3d 896, 899 (9th Cir. 1994) ("We have held that an erroneous prediction by a defense attorney concerning sentencing does not entitle a defendant to challenge his guilty plea, although an exception might be made in a case of gross mischaracterization of the likely outcome.") (internal quotation marks and citations omitted).

**[6]** However, as a general rule, we do not review challenges to the effectiveness of defense counsel on direct appeal. *United States v. McKenna*, 327 F.3d 830, 845 (9th Cir. 2003). Thus, in *McKenna*, we declined to review an ineffective assistance of counsel claim on direct appeal because we concluded, *inter alia*, that we could not evaluate the defendant's claim that counsel should have filed various motions because the "record [wa]s . . . not developed with respect to why [the defendant's] attorneys felt that the motions [the defendant] wanted filed were not warranted by the evidence." *Id.*

To similar effect is our decision in *United States v. Laughlin*, 933 F.2d 786, 788-89 (9th Cir. 1991), where a defendant whose probation was revoked brought an ineffective assistance claim on direct appeal and contended that his counsel's performance during his revocation hearing was so constitutionally deficient as to merit a new hearing. We declined to address the defendant's claim because "[t]he record contain[ed] little more than generalized assertions of incompetency." *Id.* at 789. We stressed that "[f]ormer defense counsel has had no opportunity to explain his actions" and that the defendant had not "established any foundation for

demonstrating that the alleged errors actually prejudiced the outcome of the hearing." *Id.*

The rationale for our general rule, as explained in *United States v. Birges*, 723 F.2d 666, 670 (9th Cir. 1984), is that ineffectiveness of counsel claims "usually . . . cannot be advanced without the development of facts outside the original record." Stated another way, a "[c]hallenge [to effectiveness of counsel] by way of a habeas corpus proceeding is preferable as it permits the defendant to develop a record as to what counsel did, why it was done, and what, if any, prejudice resulted." *Laughlin*, 933 F.2d at 788-89.

**[7]** We have recognized two extraordinary exceptions to this general rule: We have permitted ineffective assistance claims to be reviewed on direct appeal in the unusual cases (1) where the record on appeal is sufficiently developed to permit determination of the issue, or (2) where the legal representation is so inadequate that it obviously denies a defendant his Sixth Amendment right to counsel. *United States v. Daychild*, 357 F.3d 1082, 1095 (9th Cir. 2004).

**[8]** In these exceptional cases, the reason for our general rule is inapplicable because development of further evidence is unnecessary to assess whether counsel performed below the constitutionally required standard. *See, e.g., United States v. Anderson*, 850 F.2d 563, 565 n.1 (9th Cir. 1988). But neither of these exceptions apply here; as Jeronimo points out, the record contains no evidence from Kolego. Contrary to the dissent's argument, we do not suggest that evidence from Kolego is required because he might have made a "strategic decision" not to inform Jeronimo about the career offender issue. Rather, such evidence is necessary because, on the current state of the record, we cannot determine whether Kolego in fact failed to inform Jeronimo about that issue at all. Jeronimo cannot, at this stage on direct appeal, make out an ineffective assistance claim.

**[9]** In light of the scope of the record on this direct appeal, we cannot now conclude that Jeronimo has shown that his plea agreement, which included an unequivocal waiver of his appeal rights, was involuntary and unenforceable. Further, "we will not remand a case from direct appeal for fact-finding related to an ineffective assistance of counsel claim, but allow a defendant to pursue the issue in district court collateral proceedings." *United States v. Reyes-Platero*, 224 F.3d 1112, 1117 (9th Cir. 2000).[4]

---

[4]We leave open the possibility that Jeronimo might raise his ineffective assistance argument on federal habeas procedure, through a § 2255 motion, notwithstanding that Jeronimo's appeal waiver covered "all his waivable statutory rights to file a petition pursuant to 28 U.S.C. § 2255 challenging the length of his sentence."

Although a defendant may waive the statutory right to file a § 2255 petition "challenging the length of his sentence," we do not decide whether such language would necessarily encompass a claim challenging the knowing and voluntary nature of the plea agreement (and accompanying waiver of § 2255 rights). Further, we do not decide whether even an express waiver of all § 2255 rights could be enforced to preclude an ineffective assistance claim implicating the voluntariness of the waiver itself. *See United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994) (expressing "doubt" that plea agreement could waive such a claim, but declining to reach the issue).

Those of our sister circuits considering this issue have uniformly held that a waiver of § 2255 rights cannot be enforced against a petitioner challenging the waiver's validity on ineffective assistance of counsel grounds. *See United States v. White*, 307 F.3d 336, 341 (5th Cir. 2002) ("[A] waiver of appeal may not be enforced against a section 2255 petitioner who claims that ineffective assistance of counsel rendered *that waiver* unknowing or involuntary."); *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001) ("[W]e hold that a plea agreement waiver of postconviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver."); *DeRoo v. United States*, 223 F.3d 919, 924 (8th Cir. 2000) ("A defendant's plea agreement waiver of the right to seek section 2255 post-conviction relief does not waive defendant's right to argue, pursuant to that section, that the decision to enter into the plea was not knowing and voluntary because it was the result of ineffective assistance of counsel."); *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999)

### III

**[10]** We lack jurisdiction to entertain this appeal because the appeal waiver in Jeronimo's plea agreement is unambiguous and the record as it is currently constituted fails to demonstrate that the agreement was not knowingly and voluntarily made.[5]

---

(permitting defendant to file a § 2255 petition despite cooperation agreement containing § 2255 waiver because "[j]ustice dictates that a claim of ineffective assistance of counsel in connection with the negotiation of a cooperation agreement cannot be barred by the agreement itself — the very product of the alleged ineffectiveness"). However, because the issue is not squarely presented in this case on direct appeal, we leave for another day our assessment of whether a waiver such as made by Jeronimo can be challenged through a § 2255 motion questioning the validity of the waiver.

[5]The dissent contends that we do not address whether Jeronimo's plea "was knowingly and voluntarily made in light of his lawyer's representations." We disagree. We reviewed whether the plea was knowing and voluntary in light of the district court's plea colloquy. Because that colloquy was a model of what needs to be reviewed under Rule 11, the plea was not unknowing or involuntary on its face. The dissent incorrectly urges that we cite no authority for the statement that the plea was knowing and voluntary on its face because it satisfied Rule 11. We quoted from *Portillo-Cano* the rule that a waiver must be honored when the plea agreement is voluntary and taken in compliance with Rule 11. 192 F.3d at 1250. Because the point of Rule 11 is to ensure that a plea is knowing and voluntary, Rule 11 also is authority for our decision. *See* Fed. R. Crim. P. 11(c)-(d) (2001) (provisions entitled "Advice to Defendant" and "Insuring That the Plea is Voluntary"); Fed. R. Crim. P. 11 advisory committee's note, 1975 Enactment (amended Rule 11(c) and (d) outline advice the court must give the defendant and "the steps that the court must take to insure that a . . . plea has been voluntarily made."). More precedents might be considered, *see, e.g.*, *McCarthy v. United States*, 394 U.S. 459, 465 (1969) (Rule 11 "is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary"); *United States v. Youpee*, 419 F.2d 1340, 1344 (9th Cir. 1969) ("Rule 11 precludes a judge from accepting a defendant's plea of guilty without 'first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea.' "), but they lead to the same conclu-

## APPEAL DISMISSED.

sion: A colloquy satisfying Rule 11's requirements will lead to a plea being considered knowing and voluntary, unless some misrepresentation or gross mischaracterization by counsel has tainted the plea. *See* Section II.B. If Jeronimo's counsel made erroneous predictions, that would be insufficient under our precedents to render his plea unknowing or involuntary, unless Jeronimo could establish that his counsel made misrepresentations or gross mischaracterizations. *See id.*

The unavoidable problem with the dissent's argument is that the record contains no evidence of such misrepresentation or gross mischaracterization by counsel Kolego. The dissent urges that we ignore Jeronimo's hearing testimony and are "plain wrong" in suggesting that "there is no record on the issue" of ineffectiveness. We did not ignore Jeronimo's testimony, and have not said that there is no record, but more precisely that the record is inadequate as it now stands in light of Jeronimo's comprehensive plea colloquy and the absence of evidence of his counsel's position. For while Jeronimo testified that he understood he had a "deal" with Kolego for a lesser sentence, he did not give evidence of any misrepresentation or gross mischaracterization by Kolego, and in his colloquy he acknowledged that he understood the judge would set the sentence regardless of what Kolego might have predicted. This is why the case cannot yield immediate relief, although Jeronimo may seek relief through habeas proceedings if he can marshal supportive evidence.

The dissent also argues that ineffective assistance was raised and litigated in the district court, as a reason not to defer to collateral proceedings. But the issues whether there were misrepresentations or gross mischaracterizations were not litigated. They were not even raised explicitly. Instead, Jeronimo's new counsel at the plea withdrawal hearing said that he was "not telling the court that [Jeronimo] was tricked by [former counsel Kolego]," and Jeronimo's testimony was only that he understood he had a deal with Kolego for a lighter sentence and that he had been unaware of the possibility of career offender sentencing.

The dissent's reliance on *Signori* is unpersuasive. In *Signori*, we rejected an ineffective assistance claim on direct appeal because although the defendant had submitted nothing more than his "unsworn contention . . . that he had been misled by counsel," his original counsel had submitted a sworn affidavit specifically denying each of the defendant's allegations. 844 F.2d at 639. By contrast, here we have nothing from Jeronimo or his former counsel to illuminate "what counsel did, why it was done, and what, if any, prejudice resulted." *Laughlin*, 933 F.2d at 788-89. While

BERZON, Circuit Judge, dissenting:

On March 17, 2003, Pascual Jeronimo filed a pro se motion to withdraw his guilty plea due to "inadequate and fraudulent representation by [his] attorney." At the hearing on this motion, Jeronimo, represented by new counsel, was asked whether, "[d]uring the conversations with your attorney, did the phrase 'career offender' ever come up?" He answered "No, he didn't tell me anything about that," and maintained that "I made a deal with my attorney, I trusted in him, sir, and I signed for 87 months. When I realized that the sentence was longer, if I had realized, if I known [sic] that, I wouldn't have sign [sic] it." After a hearing that included a lengthy examination and cross-examination of Jeronimo and argument from counsel on both sides, the district court, noting that the accusation that the "defense attorney blew the career offender issue" was made without evidence from the attorney, determined that the truth or falsity of Jeronimo's account did not matter. Rather, said the district court, "even if that was the case" — that is, even if the defense attorney *did* "bl[o]w the career offender issue" — "a perfect attorney doesn't exist, and the question is whether a defendant has been properly informed of the range of consequences that *could* occur" (emphasis added). The district court then denied Jeronimo's motion to withdraw his guilty plea.

As the majority recognizes, the appeal waiver "must stand or fall with the agreement of which [it is] a part," and is therefore valid only if the plea agreement itself was knowingly and

---

there is Jeronimo's testimony on what he thought his sentence per a "deal" with counsel would be, there is no evidence in the record that counsel misled him or grossly mischaracterized the sentence he would receive. Nor is there evidence from counsel to prove the converse, as in *Signori*.

The dissent's argument that we should remand for fact-finding runs contrary to our circuit's precedent that the proper procedure is not to remand but to let Jeronimo develop his argument in collateral proceedings. *See* Section II.B.

voluntarily made.[1] *Ante* at 2098 (quoting *United States v. Portillo-Cano*, 192 F.3d 1246, 1250 (9th Cir. 1999)). Citing *United States v. Signori*, 844 F.2d 635 (9th Cir. 1988), the majority also recognizes that attorney misrepresentation or gross mischaracterization can invalidate a guilty plea. *Ante at* 2099. Given these principles, the validity of the appeal waiver is bound up with the merits question that Jeronimo presents: whether he should have been allowed to withdraw his guilty plea because of erroneous advice by his counsel regarding the applicable sentencing provisions.

Yet, the majority never addresses the crux of this case — whether Jeronimo's plea was knowingly and voluntarily made in light of his lawyer's representations. Instead, the majority recites that ineffective assistance claims are generally better suited for collateral review, and ducks the central issue. This decision, made despite the fact that the legal question at issue *was* raised in and decided by the district court after a full hearing, relegates the most salient inquiry to possible — but not certain — resolution on a § 2255 habeas petition.

At bottom, the majority offends logic with a basic "chicken and egg" scenario: It relies on a waiver whose validity is contingent upon the answer to a legal question to preclude the consideration of that very legal question.

Not surprisingly, given the convoluted nature of its reasoning, the majority's approach cannot be reconciled with our precedents. This circuit *has* dealt with ineffective assistance of counsel issues on appeal in connection with knowing and voluntariness challenges to plea agreements. I therefore respectfully dissent.

---

[1] I agree with the majority that the waiver is within the terms of the plea agreement.

# I

Before proceeding to the issues regarding Jeronimo's ineffective assistance claim against his counsel, the majority begins by evaluating the Rule 11 colloquy. Without citing a single authority,[2] the majority indicates that the colloquy "on its face . . . shows that Jeronimo's plea was knowingly and voluntarily made." *Ante* at 2098.

Jeronimo stated under oath, however, that he did *not* understand the plea agreement because he was never informed of the fact that he qualified as a career criminal. He also testified that his counsel knew of his prior convictions, and that "I signed for 87 months." If one believes those representations, and the district court did not state that it disbelieved them, then Jeronomio did not understand the agreement when he talked to his attorney Kolego, or when he began the Rule 11 colloquy with the district court judge, or during the Rule 11 colloquy when the judge asked him if he had discussed the sentencing guidelines with his attorney, or when the government mentioned that this prior conviction could affect his sentence, or after the Rule 11 colloquy. For, as far as the record shows, no one — not Kolego, not the district court judge, not the prosecutor — *ever* mentioned that it was *mandatory* that the career offender provision of the law applied to Jeronimo, and that the *minimum* sentence he could receive was therefore 151 months.[3] Mentioning the maximum statutory sentence did

---

[2]The majority suggests in a footnote at the end of its opinion that its reference to *United States v. Portillo-Cano*, 192 F.3d 1246 (9th Cir. 1999), supports the idea that "a waiver must be honored when the plea agreement is voluntary *and* taken in compliance with Rule 11." *See ante* at 2103-04 n.5 (emphasis added). The case does stand for that proposition. The question here is not whether the judge complied with Rule 11; it is, instead, whether the plea agreement was voluntary. As the very language quoted by the majority makes clear, *both* conditions are necessary for a plea agreement to stand.

[3]Under the Sentencing Guidelines, a defendant must be classified as a "career offender" so long as:

not take care of the problem, nor did informing Jeronimo that his sentence was ultimately up to the judge. The problem was that his lawyer had erroneously informed him that an 87 month sentence was at least a *possibility* (leaving aside any prediction or "deal" regarding that sentence), when it was not. So Jeronimo had erroneous information, precluding him from accurately evaluating his options and risks. In other words, his decision to plead guilty was not "knowing," even if it appeared otherwise to the judge who took the plea.

Importantly, the problem here was not just a failure to make an accurate prediction or other assessment of the possibilities. It was an absolute certainty that, under the sentencing guidelines, Jeronimo *would* qualify as a "career criminal" if he pled guilty. *See* U.S.S.G. § 4B1.1 (2002); *supra note* 3.

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offence of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a) (2002). Additionally, if the specified offense level for a career offender is greater than the offense level otherwise applicable, then the higher offense level "*shall apply.*" *Id.* § 4B1.1(b) (emphasis added).

Jeronimo was 34 years old at the time of sentencing, and the offense in this case is "Possession with Intent to Distribute Methamphetamine and Heroin," which qualifies as a "controlled substance offense" because each offense is punishable by up to 20 years imprisonment. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C); U.S.S.G. § 4B1.2(b) (defining "controlled substance offense"). Previously, Jeronimo was convicted of Assault II, which qualifies as a "crime of violence," *see id.* § 4B1.2(a), and "Delivery of a Controlled Substance," which qualifies as a "controlled substance offense," *see id.* § 4B1.2(b). Jeronimo therefore qualified as a "career offender" if he pled or was found guilty of the charges underlying this appeal, and his base offense level was required to be set at 32, with a minimum sentence of 151 months due to his Criminal History category and 3-level reduction for acceptance of responsibility. *See id.* § 4B1.1(b).

Furthermore, the lawyer had the prior conviction information necessary to so inform Jeronimo.[4] This case therefore concerns a defendant whose counsel left him uninformed about his *certain* legal fate if he accepted a plea agreement, and instead affirmatively indicated that a lower sentence was *possible* than was actually the case.

## II

Given this predicament, one can easily understand why Jeronimo claimed in the district court, as the basis for his motion to withdraw his guilty plea, that the advice of his counsel was ineffective. The majority's ultimate reason for refusing to hear that claim is that we generally do not hear ineffective assistance claims on direct appeal. The reason for that policy, however, is that normally, the record on appeal is deficient, as there was no litigation on effectiveness of counsel in the district court. In this case, however, the ineffectiveness issue and the merits question, withdrawal of the guilty plea, collapse into one another and turn on identical facts. Consequently, there *was* a hearing on the ineffectiveness issue, where Jeronimo presented sworn testimony. To suggest that there is no record on the issue is therefore just plain wrong.

During the August 18, 2003, hearing concerning the motion to withdraw Jeronimo's guilty plea, Jeronimo testified under oath. This is what he said:

QUESTION: And did you discuss the merits of the plea offer many times with your attorney?

---

[4]This case is quite different from one in which the lawyer is not aware of his client's prior convictions when he provides advice concerning pleading guilty. In that circumstance, the attorney's obligation is to make a reasonable inquiry regarding priors, or to inform the client of the range of possibilities depending on what his client's record turns out to be.

ANSWER: Yes, a number of times.

QUESTION: And, finally, he convinced you that you should accept the plea offer; is that correct?

ANSWER: Yes.

QUESTION: And during your discussions with your attorney, did — do you know if he was aware of your prior criminal history?

ANSWER: Yes, he did know.

QUESTION: He knew that you had a prior felony conviction for drug distribution?

ANSWER: Excuse me, I'm sorry?

QUESTION: Your attorney knew that you had a prior conviction for drug distribution?

ANSWER: Yes.

QUESTION: Your attorney knew of that?

ANSWER: Yes, he knew that.

QUESTION: And he also knew, based upon your discussions with him, that had you [sic] a prior felony assault conviction; is that correct?

ANSWER: Yes.

QUESTION: In your many discussions with your attorney, did he predict — did you discuss the sentencing guidelines?

ANSWER: Yes, we did.

QUESTION: And did he predict what your sentence would be if you accepted the plea offer?

ANSWER: Yes.

QUESTION: And what was your understanding of the sentence you would receive based upon the plea offer?

ANSWER: Eighty-seven months.

QUESTION: During the conversations with your attorney, did the phrase "career offender" ever come up?

ANSWER: No, he didn't tell me anything about that.

. . . .

QUESTION: If you had known that you would receive a sentence of 151 months, would you have accepted the plea offer?

ANSWER: No, I would not have.

. . . .

QUESTION: And all your lawyers have told you when it comes to sentencing that that would be left up to the judge, correct?

ANSWER: Yes. But I made a deal with my attorney, I trusted in him, I trusted in him, sir, and I signed for 87 months. When I realized that the sentence was longer, if I had realized, if I known [sic] that, I wouldn't have sign [sic] it.

. . . .

QUESTION: In fact, in this particular case, Judge Hogan, the judge you are in front of today, made that clear to you during the course of the plea petition, that it was going to be up to him what sentence you were going to get, correct?

ANSWER: Yes, that's fine what you say, but what happened to the deal that I made with my attorney?

QUESTION: The deal that you made with your lawyer, sir, did not include what this judge was going to sentence you to, correct?

ANSWER: Yes.

QUESTION: And, in fact, when the court asked you, this judge here, asked you is your guilty plea freely and voluntarily made, with a good understanding of the nature of the charges against you, and the matters in this guilty plea petition and plea bargain letter, and those things we've talked about today, you answered yes through an interpreter, did you not?

ANSWER: Because I made a deal with my attorney. I had spoken to him.

QUESTION: And then when the judge said ["]I'll accept the guilty plea,["] I told you something. And what I said was, "Please the court, before accepting the plea, I want to make sure that the defendant" — that would be you, sir — "understands that under the relevant facts that the government is going to bring to the court's attention and to probation's attention is the fact the government will contend he has a prior delivery of a controlled substance conviction in 1994; and a felony assault in the second degree, two counts in 1995; that he was an illegal alien at the time of these drug trafficking crimes, as well as

escapee and a fugitive from the Oregon Department of Corrections.

I just want those relevant facts to be included in this colloquy so that Mr. Jeronimo is aware that that's something the government may bring up, in fact, will bring up at sentencing before entering voluntarily his guilty plea."

Do you remember me telling you that?

ANSWER: Yes, sir, I do.

. . . .

QUESTION: And the court went further, this judge said, and do you understand that if the party (sic) agrees with those facts, it will likely affect the extent of your sentence?

ANSWER: I had talked about that with my attorney.

. . . .

QUESTION: So when you pled guilty, you understood that you could face a maximum sentence of more than 151 months, did you not?

ANSWER: He never talked about — my attorney never talked about that. If I had known that, I would not have plead guilty.

. . . .

QUESTION: Didn't the court tell you, "the plea petition says the maximum sentence is 20 years imprisonment"? You heard that, didn't you?

ANSWER: Yes.

QUESTION: You still pled guilty, right?

ANSWER: Because I had spoken to my attorney, I made a deal.

The government presented no testimony controverting Jeronimo's sworn testimony. Nor did the judge decide whether the attorney did fail to provide Jeronimo with essential information.

The majority ignores Jeronimo's sworn testimony. It cannot be the case that *because* the testimony was uncontroverted, an appellate court, in the absence of any district court credibility determination, can simply assume the opposite is true. Thus, although the majority suggests that Jeronimo cannot make out an ineffective assistance claim because "the record contains no evidence from Kolego," *ante* at 2101, this suggestion is without any basis. The government could have put on such evidence but did not. Jeronimo was not required to, once he told the court his version of events.

Moreover, on the merits of the ineffective assistance claim, a failure to inform one's client of the mandatory application of a sentencing provision can never qualify as a "strategic decision." We are not evaluating this attorney's decisions in front of a judge or jury. Instead, we are considering only whether the attorney deficiently advised his client, so that his client's plea was not knowing and voluntary. *See, e.g., Chizen v. Hunter*, 809 F.2d 560 (9th Cir. 1987); *Iaea v. Sunn*, 800 F.2d 861 (9th Cir. 1986).

The very reason for a Rule 11 plea colloquy is to ensure that "the criminal defendant who pleads guilty understands exactly what that plea means." *United States v. Rios-Ortiz*, 830 F.2d 1067, 1070 (9th Cir. 1987). As this court recognized in *Iaea*, " 'an intelligent assessment of the relative advantages

of pleading guilty is frequently impossible without the assistance of an attorney.' " 800 F.2d at 865 (quoting *Brady v. United States*, 397 U.S. 742, 748 n.6 (1970)). The majority's suggestion that an attorney has strategic discretion in advising his client of the consequences of a guilty plea disregards the fundamental tenet that "counsel [has] a duty to supply criminal defendants with necessary and accurate information." *Id.* How can the failure to fulfill a fundamental duty — a failure that results in a significantly longer prison sentence than his client would have agreed or pled to — possibly qualify as counsel's strategic decision?

I conclude that, if Jeronimo's testimony is credited, the record supports his contention that Jeronimo's guilty plea was not knowing and voluntary, because he was misinformed by his counsel regarding the sentencing options.[5]

### III

The majority thus stumbles most fundamentally when it suggests that we cannot review this challenge to Jeronimo's appeal waiver.

This case is not like most ineffectiveness challenges. In most cases, such a challenge is not made until appeal, so there is no record in the court of conviction concerning the issue. Here, Jeronimo raised the very same knowing and voluntary waiver issue in the district court as the basis for his contention that he should be allowed to withdraw his plea. The district court had a hearing on the issue, at which it took Jeronimo's

---

[5]The majority does recognize that a defendant's plea may falter based upon an attorney's "gross mischaracterization," but maintains that Jeronimo "did not give evidence of any misrepresentation or gross mischaracterization by Kolego." *Ante* at 2104. I am perplexed to imagine what could be more of a "gross mischaracterization" than telling a client that he *could* receive a sentence of 87 months, where the client's prior history, known to the attorney, dictates that such a sentence is *not possible*, and the minimum sentence is 151 months.

sworn testimony on this issue. The government had notice of the ineffective assistance issue in the Motion to Withdraw Plea of Guilty Due to Inadequate and Fraudulent Representation By Legal Counsel, but did not put on any opposing testimony.

In these special circumstances — where the ineffective assistance issue was properly raised and litigated in the district court — this court *does* have the evidence necessary to determine whether Jeronimo's plea was "knowingly and voluntarily" made. *See United States v. Laughlin*, 933 F.2d 786, 788-89 (9th Cir. 1991) (explaining that the reason habeas is often a preferable posture for ineffectiveness challenges is to establish " 'what counsel did, why it was done, and what, if any, prejudice resulted' " (quoting *United States v. Pope*, 841 F.2d 954, 958 (9th Cir. 1988))). Based on Jeronimo's sworn testimony, we know what counsel did — he failed to advise Jeronimo that the he would be sentenced as a "career criminal," and instead informed him erroneously that a lesser sentence was possible. For the reasons discussed *supra*, we know that Kolego had a duty to provide this information. It was not in Kolego's strategic discretion to erroneously inform Jeronimo in this manner. Finally, we know what prejudice resulted — Jeronimo agreed to a plea that, as he testified under oath, he would not have accepted had he known of the "career criminal" provision. As no strategic discretion could justify Kolego's actions, "it is not necessary to expand the record because in determining reasonableness we need go no further than ruling" that such a failure to advise is contrary to law. *United States v. Anderson*, 850 F.2d 563, 565 n.1 (9th Cir. 1988). Given that there was a hearing in the lower court regarding this issue in which Jeronimo was questioned and testified, this court can and should address Jeronimo's challenge.[6]

---

[6]The majority, as discussed *supra*, seems to deem Kolego's testimony indispensable. I do not agree that an attorney's testimony is necessary for

Notwithstanding the majority's assertion to the contrary, the Ninth Circuit has considered and decided the question of ineffective assistance of counsel pursuant to a challenge to a plea. *See Signori*, 844 F.2d at 638-39 (reviewing a challenge to a plea on direct appeal based on ineffective assistance of counsel); *cf. Chizen*, 809 F.2d at 562 (reviewing a challenge to a plea on direct appeal based on claim of "counsel's misrepresentations as to what his sentence *in fact* would be"). The majority's argument that we cannot consider an ineffective assistance claim is inconsistent with *Signori*, which reviewed the incompetency challenge directly rather then dismissing the plea challenge to await a § 2255 motion.[7]

While asserting that this court does not review ineffective assistance claims on direct appeal, the majority fails to cite any case refusing to consider an ineffectiveness issue on direct appeal in which the issue *was* litigated in district court on a plea withdrawal motion (or for any other reason, for that matter). Every case the majority cites for its central proposition concerns an ineffectiveness claim involving attorney conduct unrelated to any plea withdrawal hearing, or to any other hearing held before the district court. The cases cited thus offer little enlightenment regarding an ineffective assistance claim presented at an evidentiary hearing as part of an effort

---

an ineffectiveness challenge where there is no possibility of a proper use of strategic discretion and where the government, as opposing party, could have sought to disprove Jeronimo's representations by presenting Kolego as a witness but did not. If, however, the majority still believes the testimony is necessary, it should have remanded the case back to the district court for further factfinding, as the question of Kolego's advice was properly before the district court on the plea withdrawal motion.

[7]The record here is more developed than in *Signori* as there is sworn uncontroverted testimony from the defendant, which accounts for my previous conclusion about the merits of Jeronimo's claim. Despite this sworn testimony, the majority goes on, oddly, to decide that because the admitted evidence is not controverted, the record is less developed and the evidence is weaker than in a case like *Signori,* in which the evidence was disputed. *See ante* at 2103-05 n.5.

to withdraw a guilty plea. *See United States v. Daychild*, 357 F.3d 1082, 1094-95 (9th Cir. 2004) (attorney filed pretrial motions to continue when client wanted a speedy trial); *United States v. McKenna*, 327 F.3d 830, 845 (9th Cir.) (failure to admit evidence at trial and failure to file motions), *cert. denied*, 540 U.S. 941 (2003); *Laughlin*, 933 F.2d at 788-89 (attorney conduct during a hearing for revocation of probation); *Anderson*, 850 F.2d at 565 n.1 (failure to request a particular jury instruction); *United States v. Birges*, 723 F.2d 666, 669-70 (9th Cir. 1984) (failure to request witnesses). Given the unique connection in this case between the ineffectiveness issue and the merits question on appeal, the majority's reliance on the court's general reluctance to address ineffectiveness claims on direct appeal is entirely out of place.

## IV

In sum: The majority refuses to consider the appeal of a criminal defendant who, in sworn and uncontradicted testimony, made clear that, due to his attorney's representations, he never understood the mandatory legal consequences of his plea agreement. By purporting to enforce the appeal waiver, the majority refuses to reach an ineffectiveness of counsel claim that could resolve both the availability of an appeal and the merits of the appeal, and that was litigated below. Its refusal is based on cases in which, unlike here, the district court had no occasion to hold a hearing on the ineffectiveness claim the defendant wishes to raise on appeal. Those cases have no application here. The majority's insistence on enforcing this so-called meeting of the minds strips Jeronimo of the chance to assert many of the basic rights afforded criminal defendants in our adversarial system.[8]

---

[8]The importance of the way we handle plea agreements cannot be understated. During fiscal year 2002 — the year that Jeronimo both signed and challenged his plea agreement — the plea agreement was the central method of conviction in the criminal justice process as 97% of all convictions nationally, 98.3% of all convictions in the Ninth Circuit, and 98.7% of all convictions in Oregon — the state where Jeronimo was arrested — were made by plea bargain. *See* U. S. Sentencing Comm'n, *Federal Sentencing Statistics by State, District, and Circuit* (2002), http://www.ussc.gov/JUDPACK/2002/or02.pdf.

I respectfully dissent.