**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 1, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

TIMOTHY J. SMITH,

      Plaintiff-Appellant,

v.

MORTON INTERNATIONAL, INC.,

      Defendant-Appellee.

No. 11-3081
(D.C. No. 6:09-CV-01050-EFM)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**EBEL**, Circuit Judge.

---

Plaintiff Timothy J. Smith appeals from a district court order granting

summary judgment for his employer, defendant Morton International, Inc.,

(Morton), on his claim of discrimination under the Americans with Disabilities

Act (ADA), 42 U.S.C. §§ 12101-12213.[1]  The district court held Smith's claim

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel.  It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]     The ADA was amended, effective January 1, 2009, prior to the grant of
summary judgment here.  The district court properly held that the amendments do

(continued...)

failed at the prima facie case stage for two distinct reasons: he had not shown either that he was disabled within the meaning of the ADA or that Morton had discriminated against him on the basis of his alleged disability.[2] On de novo review, *see Doyal v. Okla. Heart, Inc.*, 213 F.3d 492, 495 (10th Cir. 2000), we agree that Smith has failed to raise a genuine issue of material fact as to the existence of his alleged disability, and affirm on this basis without reaching the analytically subsequent question of discrimination *vel non*.

Morton terminated Smith for making comments to co-workers that assertedly violated the terms of a probationary "Last Chance Agreement" (LCA) imposed on him after he threatened another employee outside the workplace. An arbitrator subsequently ordered Smith reinstated, ruling that his comments amounted to mere "shop talk," permitted under the arbitrator's reading of the LCA. Smith then brought this action, alleging that Morton violated the ADA by discriminating against him on the basis of a "regarded as" disability, i.e., that

[1](...continued)
not apply retroactively to the operative events in this case. *See Johnson v. Weld County*, 594 F.3d 1202, 1217 n.7 (10th Cir. 2010); *Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1261 n.2 (10th Cir. 2009).

[2]    "[T]o establish a prima facie case of disability discrimination under the ADA, a plaintiff must demonstrate that he (1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability." *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1037-38 (10th Cir. 2011) (internal quotation marks omitted).

Morton mistakenly regarded him as disabled by a Hepatitis C condition and that this misapprehension was the true motive for his termination under the LCA.[3]  He posited that Morton deemed his condition a serious health threat to other employees, impeding his ability to work, and that when the opportunity arose, Morton accused him of violating the LCA to rid itself of the problem.  The district court found this theory wholly unsupported by the evidence, under established legal standards governing "regarded as" disabilities.  We begin by summarizing the evidence, particularly as it relates to Morton's response to Smith's condition from the time he first revealed it to the company.

## I.  Relevant Facts

The relevant historical facts are largely undisputed.  The pretrial order sets out most of the salient events through the following stipulations:

2.      Plaintiff was first employed by Defendant at [its salt mine and processing] facility in 1998. . . .

4.      In early 2002, Plaintiff was diagnosed with Hepatitis-C.

---

[3]      The third (discrimination) prong of the ADA prima facie case requires the plaintiff to "show that he has suffered an adverse employment action because of the disability." *England*, 644 F.3d at 1038 (internal quotation marks omitted). The parties have not discussed this adverse-action element in connection with the fact that Smith was reinstated with back pay—perhaps because this court has held, at least in the Title VII context, that "[a]ctions such as . . . terminations are by their nature adverse, even if subsequently withdrawn," *Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1103, 1104 (10th Cir. 1998) (holding terminated employee who was "reinstated after intervention by his union" had nevertheless suffered adverse employment action).  In any event, as we rest our disposition on the first prong of the prima facie case, we need not pursue the point further.

5. Defendant granted Plaintiff a six-month leave of absence to obtain treatment for his Hepatitis-C. Plaintiff received chemotherapy during that leave of absence.

6. While Plaintiff was off work on his leave of absence, one co-worker (Brian Henning) expressed concerns about working with Plaintiff, indicating a concern about the communicability of the disease/condition.

7. Company management addressed Mr. Henning and his concerns. First, manager Mark Estes told Mr. Henning to stop making remarks he was making. Further, Human Resources Manager John Cavanaugh distributed information to employees to advise them that Hepatitis-C was not communicable through casual contact and that no one had anything to fear in working with Plaintiff on his return to work. . . .

10. Plaintiff [returned in late 2002 and] worked for Defendant without incident until August 2005 when he was involved in an off-site incident with co-worker Jeff Louma. Plaintiff does not attribute this incident in any way to his Hepatitis-C diagnosis.

11. In the August 2005 incident, Plaintiff alleges that Mr. Louma "flipped him off" when they passed in traffic in public. Plaintiff admits that, in response to this, Plaintiff got out of his truck and told Louma "if he kept jacking with me I was going to stomp his butt right into the ground."

12. [M]anagement suspended both Plaintiff and Louma without pay for a period of three weeks.

13. The labor union . . . challenged both suspensions. With respect to Plaintiff, an agreement was reached in October 2006 to reduce the suspension of Plaintiff from 3 weeks to 3 days, provide him the difference in pay for that period, and enter into a "last chance agreement."

14. Under the "last chance agreement" to which Plaintiff agreed, Plaintiff was advised that . . . any aggressive, abusive, hostile language of any kind or any behaviors, verbal or non-verbal, that would [be] considered threatening, violent, or otherwise in

-4-

violation of the company's workplace violence and anti-harassment policy would be a violation of the last chance agreement [and] . . . if there were further violations of company policies or if he engaged in any kind of inappropriate conduct as determined by the company, his employment would be immediately terminated. . . .

16. On January 14, 2007, Plaintiff was involved in an incident in the lunchroom.

17. Defendant terminated Plaintiff on January 24, 2007, for []his conduct [in the January 14 incident], advising Plaintiff that he had violated his last chance agreement agreed upon in October 2006. . . .

19. After his termination in January 2007, the labor union representing Plaintiff filed a grievance challenging his termination. In November 2007, a labor arbitrator reinstated Plaintiff with full back pay and benefits, finding that the termination was without "just cause."

Aplt. App. at 27-29.

As will become evident shortly, certain details of the January 14 incident, and Morton's official account of them in the ensuing arbitration proceeding, are central to Smith's "regarded as" disability claim. Again, the facts material to our disposition are not in dispute, as clarified by Morton's summary judgment motion and Smith's response thereto. The incident occurred while Smith was eating lunch with co-workers Brian Henning and Ray Reese. Work banter led to Smith saying to Reese "Suck my dick" and then adding "Well, why not? Brian [Henning] would." *Id.* at 61, ¶¶ 21-22 (internal quotaton marks omitted); *see id.*

at 139, ¶¶ 21-22. Henning informed management about the incident,[4] prompting an investigation that ultimately led to Smith's discharge under the LCA.

Smith challenged his termination, disputing Morton's claim that his comments to Reese and Henning violated the terms of the LCA. Smith argued that other Morton employees, including Henning, had used similar or worse language, which was simply "shop talk" at the Morton facility. In a passing argument that Smith has now seized upon for his own purposes here, Morton attempted to bolster its arbitration position regarding the hostile/threatening nature of Smith's comment by asserting that "'since Tim Smith was Hepatitis C, that to in effect threaten someone in this particular [i.e., engagement in oral sexual contact] could be considered a threat to the other employee's life.'" *Id.* at 206 (Arbitration decision quoting "a new argument raised in the employer's [Morton's] brief that was not raised at the hearing"). The arbitrator ultimately agreed with Smith that his comments were neither threatening, violent, nor sexually harassing, but the sort of coarse "shop talk" broadly tolerated by Morton, and that, when properly read, the LCA prohibited the former but not the latter. *Id.* at 208-09.

---

[4]     Henning also claimed the incident went beyond the limited exchange noted above, with Smith using a microphone to continue to taunt him along the same lines. Aplt. App. at 61, ¶ 23. Smith has denied this. *Id.* at 139, ¶ 23. Our disposition does not require us to delve into this dispute.

## II. Analysis of "Regarded As" Disability

Under the law governing this case, "[a] person is regarded as disabled when '(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.'" *Lanman v. Johnson County*, 393 F.3d 1151, 1156 (10th Cir. 2004) (quoting *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999)). Smith's position, that Morton regarded him as disabled on the basis of his Hepatitis C condition, falls within the second category. It is undisputed that Smith has Hepatitis C, which he does not claim is actually disabling. He claims, rather, that Morton mistakenly believed his condition to be disabling, i.e., that it substantially limited a major life activity–specifically, his ability to work. Smith asserts Morton deemed him unable to work because it erroneously considered the contagiousness of his condition a serious threat to co-workers.

The factual record simply does not support this claim. Morton's response to Smith's diagnosis–affording him leave for treatment and allowing him to return upon its completion; taking prompt action to defuse employee misconceptions about exaggerated risks of contagion from Hepatitis C; and maintaining Smith's employment for nearly five years following his diagnosis–provides no basis for inferring that Morton believed his condition rendered him unable to work. The only reasonable inference is squarely to the contrary.

Smith contends, however, that Morton's litigating position in the arbitration concerning his discharge under the LCA–specifically its passing argument, noted above, regarding the particularly threatening nature of his comments during the January 14 incident–betrayed Morton's latent mis-perception that his condition posed a deadly risk to co-workers. And, he continues, such a misunderstanding would necessarily entail the belief that his condition must render him unfit for work. Smith's contention rests on a basic *non sequitur*.

The thrust of Morton's argument was that Smith's comments *about oral sexual contact* implicated a unique threat in light of his condition, which can be spread by such means. This point might be relevant to the"regarded as" disability here *if Smith's job entailed oral sexual contact*–in which case the risk of infecting co-workers could impede his ability to work. *See Dillon v. Mountain Coal. Co.*, 569 F.3d 1215, 1219 (10th Cir. 2009) (noting first prerequisite for "regarded as" disability based on major life activity of working is that the employer "regarded [the employee] as significantly restricted in performing *his specific job* because of an impairment" (emphasis added)). But obviously it did not. Thus, the argument Morton made to the arbitrator does not support Smith's disability claim.[5]

---

[5] The district court held that the terms of Morton's argument to the arbitrator were inadmissible in this case on grounds that were vigorously disputed by Smith. As we conclude the argument does not support Smith's disability claim in any event, we need not reach issues concerning its admissibility.

-8-

We conclude that Smith failed to create a genuine issue of material fact on the threshold requirement of a disability. In light of that legal deficiency, the entry of summary judgment on his ADA claim was correct.

The judgment of the district court is AFFIRMED.

Entered for the Court


David M. Ebel
Circuit Judge